McComis et al., Appellants, *v.* Baker et al., Appellees.

[Cite as McComis v. Baker (1974), 40 Ohio App. 2d 332.]

(No. 538—Decided April 17, 1974.)

*Mr. Arthur M. Sebastion,* for appellees.
*Mr. John Emil Houchard,* for appellant.

KERNS, J. The plaintiffs, Helen and James McComis, appellants herein, commenced this action in the Court of Common Pleas of Madison County, claiming damages for personal injuries sustained by Mrs. McComis when she fell at a laundromat owned and operated by the defendants, Esther and Wayne Baker, appellees herein.

The cause was presented to a jury which returned a verdict of $9,000 for Helen McComis and $1,000 for her husband, James McComis.

Subsequently the Bakers filed a motion for judgment notwithstanding the verdict. The trial court sustained the motion, and the present appeal is directed to the order sustaining the motion.

The Bakers operated a laundromat at 37 North West Street in West Jefferson, Ohio. Mr. and Mrs. McComis operated a flower shop nearby, and Mrs. McComis visited the laundromat about twice a week. On October 9, 1970, she entered and departed from the Town Street entrance to the laundry facility four times between about 10 a. m. and 12 a. m. As she entered the laundromat the fourth time, at about 12:00 a. m., she fell and sustained the injuries complained of herein.

The complaint filed by Mr. and Mrs. McComis alleges that the Bakers improperly installed and failed to maintain a metal grill attached to a screen door, and that as the door closed the grill became detached, caught Helen McComis by the heel, and caused her to fall to the floor.

At the time of the accident, Mrs. McComis was the only person present at the laundromat, and when asked what happened when she fell, she answered that "all I know is that something caught me by the heel and the next thing I knew I was going."

The defective condition of the grill was observed for the first time by plaintiff James McComis, about two hours after the accident, at which time the grill was loose at the top and hanging down on some kind of a bar or hinge from the bottom. Mr. McComis then notified the Bakers of the condition of the grill and told them that his wife had been hurt by it. At that point, Mrs. Baker con-

tacted a workman to do whatever was required to fix the door, and the workman, Mr. Hockenberry, reported to her later on the same day that he had repaired it.

According to the evidence, the laundromat was open twenty-four hours a day and seven days a week, and patrons carrying baskets sometimes pushed them against the grill to open the door. Mr. Baker testified that the screen door had been repaired on previous occasions, and that the grills "come loose every once in a while."

On the day of the accident, the grill was attached to the door at the top with wood screws, and an exhibit submitted in evidence shows a number of unfilled screw holes where grills had previously come loose from the wood frame.

After the accident, Mrs. McComis was attended by her daughter, Barbara Humphrey, who testified that she noticed a scratch on the back of her mother's heel. Mrs. Humphrey also testified that her father asked her to go to the laundromat with him "because mother said something about the door when I was taking her to the doctor's office" and "we seen that the top of the guard on the screen door had come down and it was dragging the ground."

The issue in the case is well stated in the brief of the appellees where they argue as follows:

"Giving the plaintiffs-appellants the benefit of all the evidence, there is absolutely no evidence showing negligence on the part of the defendants-appellees or that any defect in the door was the cause of the accident. We are not basing our argument on any claim of contributory negligence. We are basing it solely on the grounds that the evidence shows no negligence on the part of the defendants-appellees which proximately caused this unfortunate accident."

Admittedly, the evidence presented by the plaintiffs was not overwhelming, and the two-hour interval between the time of the accident and the time of the discovery of the detached grill was also probably the source of some apprehension.

But a motion for judgment notwithstanding the ver-

dict does not involve the weight of the evidence. We must assume the truth of the plaintiffs' evidence as shown by the record, grant such evidence its most favorable interpretation, and consider as established every material fact which the evidence tends to prove. *Peters* v. *B. & F. Transfer Co.*, 7 Ohio St. 2d 143. In other words, the trial court had a duty to sustain the motion only if there was insufficient evidence to permit reasonable minds to reach different conclusions, and conversely, the trial court had a duty to overrule the motion for judgment notwithstanding the verdict if there was sufficient evidence to permit reasonable minds to reach different conclusions. *O'Day* v. *Webb*, 29 Ohio St. 2d 215.

The established principles governing such a motion are discussed in *Kenny* v. *Metropolitan Life Ins. Co.*, 82 Ohio App. 51, at page 55, where the court said:

"Now what is the issue on a motion for judgment notwithstanding the verdict? It is manifest that it raises the same issue as a motion for a directed verdict made at the close of all the evidence. It is said in *J. & F. Harig Co.* v. *City of Cincinnati*, 61 Ohio App. 314, 22 N. E. 2d 540, that it is nothing more than an iteration of that motion. And a motion for a directed verdict is 'in the nature of a demurrer to the evidence' and 'involves, for its purposes, an admission or assumption of the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, as well as an admission of all the facts which the evidence proves or tends to prove or support and all reasonable inferences which a jury might draw therefrom,' 39 Ohio Jurisprudence 799, 800. In other words, such a motion calls upon the court to determine the one issue of whether there is any evidence of substantial probative value in support of the adverse party's claim or defense. It poses the question of the materiality of the evidence. It does not raise any issue as to the competency of the evidence that has been received."

In the present appeal, the defendants have alluded to a number of "slip and fall" cases, but these cases have no

336

more than peripheral application to the facts of this case. Here, the accident was not the result of a static condition or a condition produced by the elements.

The evidence shows that the grill on the door at the laundromat was subjected to substantial wear and tear, that the wood screws were inadequate for their intended purpose in the operation of the business, that other similar screws had come loose from time to time, and that the defendants had knowledge of these conditions.

In its findings, the trial court also places some emphasis upon the time interval between the fall and the discovery of the defective door. True, the plaintiffs were forced to rely, for the most part, upon circumstantial evidence, but this is not fatal where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence. The law does not require every fact and circumstance which makes up a case of negligence to be proved by direct and positive evidence or by the testimony of eyewitnesses. 30 American Jurisprudence 2d 285, Section 1120.

The defendants properly observe that the duty owned by the Bakers to Mrs. McComis as a patron of the store was to exercise ordinary care to prevent an accident or injuries. *Kresge Company* v. *Fader*, 116 Ohio St. 718.

But in view of the general condition of the door, the particular use made of the grill as an incident of the business, the known inadequacy of the wood screws, and the known propensity of the grill to become loose under circumstances then existing, we are of the opinion that reasonable minds might reach different conclusions upon the issue of negligence.

Accordingly, the judgment of the Court of Common Pleas sustaining the motion for judgment notwithstanding the verdict will be reversed.

*Judgment reversed.*

CRAWFORD, P. J., and SHERER, J., concur.