IN RE MCNEIL.

(No. 83-048—Decided July 1, 1983.)

Court of Claims of Ohio

*Ms. Beverly A. Harris,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. George H. Calloway* and *Mr. Gregory W. Happ,* prosecuting attorney, for appellee.

BAYNES, J. This is an appeal of an order by a three-commissioner panel which affirmed an order of a single commissioner which denied an award of reparations from the Victims of Crime Fund. The panel decision was by a majority, one commissioner of the panel dissenting. The panel, without opinion, found and concluded that the single commissioner had properly stated the issues and interpreted the law and approved, affirmed and adopted the order appealed from.

Appellant's assignments of error, as set forth, are:

"1. The single commissioner and the panel of commissioners erred in denying an award of reparation [*sic*] when Appellee failed to show by a preponderance of the evidence that the decedent, William McNeil, was engaged in contributory misconduct at the time of his murder.

"2. The single commissioner and the panel of commissioners erred in denying a reduction in an award of reparations as provided for in Ohio Rev. Code Sec. 2743.60(D)."

These errors are essentially that the denial of an award or partial award is contrary to the weight of the evidence. We consider them together.

The single commissioner's opinion found the evidence established that the victim knew the offender was a prostitute and had solicited (R.C. 2907.24[A]) her in a downtown Cleveland bar; that he drove her to his home for sexual purposes where the offender stabbed the victim resulting

in his death; and that none of the evidence supports any other credible version of the incident.

The single commissioner's conclusion of law was that the victim, at the time of his death, was engaged in such misconduct which contributed to his death as would bar a claim pursuant to the provisions of R.C. 2743.60(D).

In the first assignment of error, appellant concedes the victim met the offender, an admitted prostitute; however, it is argued, such fact does not give rise to the conclusion that at the time the homicide was committed the victim was engaged in solicitation or that he had paid or intended to pay her for services rendered (or those which he might further engage in prior to returning her to the place of the solicitation).

It is further argued that, assuming solicitation, the homicide was remote in time and space. On this point appellant relies on *In re Haas* (April 9, 1979), Court of Claims No. 79-008, unreported, for the proposition that contributory misconduct requires a finding that:

"The conduct of the victim must have a causal relationship to the ensuing criminally injurious act. This must be tested in terms of a natural and probable result with regard to foreseeability being neither remote in time or space or interrupted by a new and independent superceding act."

As noted in the appellant's brief, the decision of *In re Williams* (March 21, 1979), Court of Claims No. 79-004, unreported, holds that in a denial or reduction of an award for grounds set forth in R.C. 2743.60(A) to (D), the burden of proof, by a preponderance of the evidence, is upon the Attorney General.

Counsel is, no doubt, conversant with the charge uniformly given to jurors set forth in 1 OJI Civil 5.10:

"d. Circumstantial evidence is the proof of facts and circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of mankind."

The definition of "inference" usually follows, which is a reasonable conclusion or deduction which can, but is not required to, be made from other facts established by direct evidence.

See, also, 42 Ohio Jurisprudence 3d 467, Evidence and Witnesses, Sections 195 *et seq.*, where it is stated at page 473, Section 198, that circumstantial evidence is as competent to prove a contract as it is to prove a crime; *McComis* v. *Baker* (1974), 40 Ohio App. 2d 332, 336 [69 O.O.2d 304]; and 29 American Jurisprudence 2d 313, Evidence, Section 265, footnoting one case as to illicit sexual relations.

Different activities have different signs and signals on which their activities proceed. *E.g.*, athletic teams, building constructors, railroaders and auctioneers may take a movement of the eye, head, finger or hand, etc., as an indication that the customer made a bid for the "gizmo," whether it was the movant's intention or not.

There is nothing to contradict the record as to the fact that the victim and the offender had met at a bar the week before for about twenty-five or thirty minutes and had talked about prostitution among other things. She parted with, "I'd see him again." At around 11:00 p.m., they met at a bar and had a drink. She had previously had a drink and had taken some heroin. The parties left for Brunswick which the court takes judicial notice was about twenty-five miles away in Medina County. They stopped en route at a Strongsville bar for another drink or drinks. They arrived at the victim's house between 1:00 a.m. and 1:30 a.m.; the victim's wife of thirty-two years was temporarily away on a visit in California. Sometime after having intercourse, the offender went to the bathroom and took the balance of the heroin in her possession

and returned to the bed the two were occupying.

Around, or prior to, 4:00 a.m., there was a discussion about returning the offender to Cleveland. the victim sought to delay the return until 7:00 a.m. At about 4:00 a.m. the offender hallucinated, thinking the victim was attacking and attempting to injure her. She obtained her hunting knife, which she carried "for protection," and stabbed the victim numerous times. He died on the floor next to the bed. As to the parties' state of intoxication, the offender said, "I would say he had it. I had it."

The victim was a Caucasian, fifty-eight years old, competent in engineering and business matters. The offender was described as a twenty year old mulatto, who was very short with unkempt black hair. She almost always wore a bandana on her head. In one lounge where she sometimes sought customers, one employee described her as, "nobody would ever pick up something like Kathy [the offender] at that place."

In *In re Pfeister* (Feb. 28, 1983), Court of Claims No. 83-012, unreported, seventeen situations were enumerated as likely to give rise to contributory misconduct. Prostitution and soliciting were among those named. Two prior cases have been decided by this court where solicitation of a female for hire was involved.

*In re Buckley* (Oct. 10, 1980), Court of Claims No. 89-021, unreported, was a case where the victim, an intoxicated white male, upon arriving at the residence of the offender, a black female, was robbed and assaulted, suffering a gunshot wound. In *Buckley,* it was assigned as error that there was no causal connection between any misconduct on the victim's part and his injury. Even if there was, it was argued, only a reduction would be reasonable under the circumstances, rather than a complete denial of an award. These are, essentially, the errors assigned in the case *sub judice.*

The test the appellant in *Buckley* urged was that contained in *In re Williams, supra,* that:

"A victim does not have to be innocent of all misconduct, but only that misconduct which can reasonably be said to have caused or contributed to the injury. Contributory misconduct connotes a finding that the misconduct is 'a' or 'the' proximate cause, but for which the injury would not have occurred."

The foregoing launched the innocent victim concept which is summarized by this court in *In re DeCerbo* (1982), 5 Ohio Misc. 2d 11, 13.

The *Buckley* decision observed that the victim's conduct and the offender's conduct were not tenuous; that it is almost a matter of common knowledge that there are many other forms of criminal activity within the scope of prostitution activities; and that the "but for" and "foreseeability" tests for a proximate cause finding are apparent in the record which does not support an argument that the denial of an award was unreasonable, or unlawful, or that it does not comport with the intention of the legislature.

The second analogous case to the case *sub judice* is *In re Smith* (May 3, 1983), Court of Claims No. 83-031, unreported. The victim, a forty-one year old black male, solicited a fourteen year old black female. The record was not clear as to why, prior to consummation of the transaction, the victim suffered an assault from which he subsequently expired. That decision cited the cases of *Haas, DeCerbo,* and *Buckley, supra.* The denial of an award by the commissioner(s) was affirmed for the same reasons as in *Buckley.*

The pertinent part of R.C. 2743.60 (D), prior to March 18, 1983 and within the period when the incident under analysis occurred, provided:

"A single commissioner or a panel of commissioners shall reduce an award of reparations or deny a claim for an award of reparations that is otherwise payable to a claimant * * * *to the extent it is deter-*

*mined to be reasonable* because of the contributory misconduct of the claimant or the victim through whom he claims." (Emphasis added.)

Appellant makes an argument, frequently made, that the criminal act of the offender was more gross or outrageous or evil than that of the victim. It is concluded, therefore, that "some compensation to the Appellant was in order." Relevant as to whether to excuse two disabling conditions contained in R.C. 2743.60(A) to (D) are "good cause" and "interests of justice." However, the phrase "to the extent it is determined reasonable" connotes the failure to reduce, rather than deny an award, is justified when not to do so would constitute an abuse of discretion.

This was one of the issues in the *Pfeister* case, *supra*. The Attorney General appealed an order of a panel of commissioners which reversed a denial of an award by the single commissioner. Due to the procedural questions raised in *Pfeister,* this court was in a posture to modify the panel's reversal. The holding was:

"* * * it would be an abuse of discretion, *i.e.* a failure to exercise a sound and reasonable legal discretion to have denied rather than reduced the award. Some additional evidence would have been necessary to deny totally the Applicant-Appellee an award of reparations."

The foregoing *Pfeister* decision was not based upon the relative gravity of the criminally injurious conduct and the contributory misconduct. It suffices to say that under the facts and the posture of that case, the application of the "abuse of discretion" principle was strictly *ad hoc*.

It is also to be noted that the amendments to the Victims of Crime Act, effective March 18, 1983, repeal from R.C. 2743.60(D) the phrase, "and to the extent it is determined to be reasonable because of the contributory misconduct of the claimant or of a victim through whom he claims." They also change the *Haas*

definition, *supra,* by stating that contributory misconduct is to be determined, "without regard to the conduct's proximity in time or space to the criminally injurious conduct." R.C. 2743.51(M).

In sum, on the weight of the evidence, it is stated in the single commissioner's opinion:

"A frequently expressed rationale for the enactment of legislation compensating victims of crime is that it is an admission of a species of liability on the part of the state because of the failure to protect a victim. (See Legal Issues in Compensating Victims of Violent Crime, The National Association of Attorney Generals, May, 1976.) The greater the incidence of crime in general, the more difficult the task of the enforcement authorities in their mission of protecting the victim and preventing the crime, and consequently, the greater exposure of liability by the state.

"It would, therefore, be inconsistent, and certainly not within the contemplation of the legislature, to compensate an individual who at the time he incurred his injury due to criminally injurious conduct was himself contributing to the crime rate and thereby increasing the burden faced by the law enforcement authorities in their statutory mission. This proposition is true regardless of relative seriousness of the crimes involved. To compensate an individual for an injury due to criminally injurious conduct perpetrated on him while he is at the same time perpetrating a crime, if against no individual but, at least, against society, is logically and legally inconsistent and incompatible with the purpose of the Victims of Crime legislation including R.C. 2743.51 *et seq.*"

While it may only be incidental, if at all, that the state is compensating victims of crime for failure to protect the victim, this court's reasoning for the enactment of victims of crime legislation is contained in *In re Schroepfer* (1983), 4 Ohio Misc. 2d 15, 19. The court cannot improve on the single commissioner's rationale. Ap-

pellant's argument that the Victims of Crime Act was enacted so that awards of reparations could be based upon comparative misconduct, and not on rectitude of a victim's conduct, is rejected, for it is inconsistent with the Act's basic purpose, as the single commissioner stated.

Assuming that the question as to whether the victim solicited the offender, or who solicited whom, as with any other factual conclusion, is subject to the reasonable man test, this court cannot substitute its judgment for that of the triers of the fact. See this court's decision in *In re Saylor* (1982), 1 Ohio Misc. 2d 1, 3.

Under the provisions of R.C. 2743.65 (A), and based on the lack of reported decisions as to application of the contributory misconduct concept, particularly in relation to the prohibition against sexual solicitation for hire, the court finds appellant's attorney is entitled to additional fees for the brief and oral argument in this appeal proceeding in addition to any other fees to which counsel may be entitled. Attention should be given to the Proposed Supreme Court Rule for the Court of Claims, Victims of Crime Compensation Section, Attorney Fees. See Ohio Official Reports, Advance Sheets, Vol. 5, No. 5 (June 13, 1983), at pages A-7 to A-9.

The court finds and concludes the assignments of error are not well-taken and they are overruled. The order of the three-commissioner panel is supported by a preponderance of the evidence contained in the record. The order of the panel of commissioners is reasonable and lawful, and it is hereby affirmed. So ordered.

*Order affirmed.*