## Reese v. Cleveland
[Cite as 8 AOA 370]

Case No. 57697
Cuyahoga County, (8th)
Decided November 1, 1990

*Anthony F. de la Pena, The Leader Bldg., #956, Cleveland, Ohio 44114, Deborah Purcell Goshien, 55 Public Square, #1325, Cleveland, Ohio 44113 and William H. Baughman, 2500 Terminal Tower, Cleveland, OH 44113, for Plaintiff-Appellee.*

*Judith M. Francetic, Asst. Director of Law, 601 Lakeside Avenue, City Hall #106, Cleveland, Ohio 44114, for Defendant-Appellants.*

PATTON, C.J.

· Defendant-appellant City of Cleveland ("City") appeals from the denial of its motions for a directed verdict and judgment notwithstanding the verdict. A jury award was rendered in favor of plaintiff-appellee Lois M. Reese ("plaintiff") for medical malpractice committed upon her husband, the decedent, Robert Reese ("decedent") by Dr. Clayborne Johnson, an employee of the City.

Plaintiff, as surviving spouse of decedent, brought an action for medical malpractice and wrongful death against the City and a number of its employees, Suburban Community Hospital and its emergency room physician, Dr. Elvira Bhardwaj. The complaint alleged that as a proximate result of the negligent and unskillful diagnosis, care and treatment of the decedent, he died in a cell at the Cleveland House of Correction ("Workhouse"). The coroner's report indicated the cause of death was chronic bronchial asthma with asthmatic bronchitis and chronic cor pulmonale.[1]

By agreement of counsel during trial, the employees of the hospital and the City were dismissed provided the parties stipulated the hospital and the City accepted responsibility, under the doctrine of respondeat superior, for the words and actions of their respective employees.

The relevant facts adduced at trial revealed that Robert Reese, age 44 at the time of his incarceration at the Workhouse, was

married to plaintiff and had three small children. The decedent was to serve a 163 day sentence which commenced on December 20, 1978 for his conviction of voyeurism.

At the time of decedent's incarceration, Dr. Johnson was an employee of the City, where he cared for sick inmates at the Workhouse. Dr. Johnson, although only working twenty hours per week at the Workhouse, was responsible for the sick inmates on a twenty-four hour basis. He was also responsible for examining and treating patients, including prescribing medications.

The decedent came under Dr. Johnson's care upon decedent's arrival at the Workhouse. On January 8, 1979, approximately ten days later, Dr. Johnson had him transferred to the infirmary. He infirmary is an in-house facility which provides twenty-four hour nursing care for sick inmates. The medical records reveal the decedent was suffering from an upper respiratory infection, complaining of coughing up green sputum, mild wheezing and having difficulty breathing. The record reveals the decedent suffered from chronic bronchial asthma since at least 1973. The decedent had made frequent visits to the Hough-Norwood Family Health Care Center ("Hough-Norwood") from 1973 to 1978 and had been treated various times with steroids and other medications appropriate for the treatment of an asthmatic condition. Dr. Johnson, by his own admission, had never requested the decedent's medical records from Hough-Norwood regarding his severe asthmatic condition.

Dr. Johnson's medical records revealed he was aware decedent had asthma and was taking tedral and steroids for it. Dr. Johnson, in addition, prescribed mellaril, a tranquilizer, for the decedent's anxiety.

On January 2, 1979, Dr. Johnson recorded in his notes that decedent had an upper respiratory infection. He prescribed ampicillin, an antibiotic, robitussin for the green sputum he was coughing up, tedral for his asthma, and valium, a tranquilizer, for "his anxious personality." Dr. Johnson considered the decedent's asthmatic condition secondary to the apparent upper respiratory infection.

On January 8, 1979, Dr. Johnson admitted the decedent to the infirmary. The nurse's notes indicate the decedent was up all night suffering from insomnia. On the same day, Dr. Johnson discontinued the ampicillin and robitussin and prescribed elixir terpin hydrate with codeine. Dr. Johnson testified the reason he prescribed the elixir was because the decedent was violently coughing and was then diagnosed with a cold that had triggered bronchitis. Dr. Johnson had changed decedent's prescription from the robitussin, an expectorant, to the elixir terpin hydrate, a cough suppressant.

On January 9, 1979, the medical records reveal the decedent was again complaining of wheezing, sputum, insomnia and an elevated temperature, but Dr. Johnson's examination did not reveal any wheezing. At this point, Dr. Johnson still felt the decedent's asthmatic condition was secondary to his upper respiratory condition. However, Dr. Johnson tripled the decedent's dosage of tedral, a medication for the treatment of asthma, between December 20, 1978 and January 10, 1979.

On January 10, 1979, the decedent was again complaining of coughing and wheezing. His insomnia persisted as he was observed pacing all night, asking to eat, drink and shower. Despite scientific literature to the contrary, Dr. Johnson testified he did not link decedent's anxiety to a condition known as oxygen deprivation which produces the sensation of suffocation as a result of an acute asthmatic condition. Dr. Johnson attributed the decedent's anxiety to the tedral he was taking in increased dosages, as anxiety is a side effect of the drug.

On January 11, 1979 the decedent's condition remained unchanged. On January 12, 1979, Dr. Johnson's notes reveal decedent had an increasing dyspnea or shortness of breath, but that he felt better. Again, Dr. Johnson diagnosed the decedent with an upper respiratory infection with a history of asthma and referred him to Suburban Community Hospital for a chest x-ray and an evaluation.

The decedent was treated by Dr. Bhardwaj at Suburban Community Hospital. After an examination, the decedent was released that same day with instructions that medications were to continue and he was to be confined to the infirmary for five days. Dr. Johnson admitted receiving these instructions from his nurse, Rosia Woods. He also admitted being told by Nurse Woods that the infirmary would be closed for three days beginning Saturday, January 13, 1979 until Tuesday, January 16, 1979, in observance of

Martin Luther King, Jr. Day. This meant there would be no physician on duty at all and no nurses on duty between 11:00 p.m. and 7:00 a.m. on each of the days the infirmary was closed.

Thomas Harden, Commissioner of Welfare Institutions in charge of the Workhouse during 1978 and 1979, testified that it was within Dr. Johnson's power to have kept the infirmary open during the holiday weekend and that it was indeed Dr. Johnson's decision to close the infirmary after conferring with Nurse Woods. Dr. Johnson testified it was standard procedure to close the infirmary on all three day weekends. Moreover, Dr. Johnson testified it was within the Commissioner's authority, not his, to have ordered the infirmary open.

In any event, the infirmary was closed and Dr. Johnson authorized the transfer of the decedent to a cell in the A-range on Saturday, January 13, 1989. The A-range is a series of approximately twenty small cells located on both sides of a long narrow corridor. Inmates with psychiatric problems are generally sent to the A-range. Guards patrol the area periodically. Dr. Johnson testified he had no alternative but to send the decedent there for the holiday weekend. While in the A-range the decedent continued to express complaints of shortness of breath.

Mr. Willie Blackwell, a guard on duty at the Workhouse from 11:00 p.m. to 7:00 a.m. during the holiday weekend, testified that it was his understanding the nurse had given the decedent his medication when she came on duty January 15, 1979 at 11:00 p.m. Mr. Blackwell stated that the decedent was "quiet" all night until about 4:30 or 5:00 a.m. At this time, the decedent expressed complaints of shortness of breath and asked for an inhaler, a breathing apparatus. Mr. Blackwell told the decedent that because there was no nurse on duty, he would have to wait until 7:00 a.m. Decedent then asked to see Mr. Blackwell's supervisor, telling him he had asthma and was having difficulty breathing. Mr. Blackwell summoned his supervisor, Mr. Marcus Sudberry. Mr. Sudberry told the decedent he would have to wait for a nurse to come on duty at 7:00 a.m. According to Mr. Sudberry's testimony, he offered to send the decedent to the hospital and the decedent declined the offer.

On January 16, 1979, at approximately 6:45 a.m., Mr. Blackwell was relieved on A-range by Mr. Ralph Banks. Mr. Banks' deposition was submitted into evidence at trial, as he was since deceased at the time of trial. Mr. Banks testified that Mr. Blackwell told him the decedent had a "bad, bad night." He further testified that the decedent was sitting on his bunk at 6:55 a.m. and indicated he was not hungry and did not want breakfast. Approximately twenty minutes later at 7:15 a.m., Mr. Banks found the decedent dead on the floor of his cell.

The cause of death was ruled as chronic bronchial asthma with asthmatic bronchitis and chronic cor pulmonale.

The jury returned a verdict for plaintiff and against the City finding the decedent forty percent negligent. In response to special interrogatories, the jury found negligence on the part of Dr. Johnson and such negligence was the proximate cause of decedent's death. The jury also found negligence on the part of the licensed practical nurses but such negligence was not the proximate cause of the death. Exonerated from any negligence were Suburban Community Hospital, Dr. Bhardwaj and the guards at the Workhouse.

The City's motion for judgment notwithstanding the verdict was denied and a timely notice of appeal was perfected to this court. The City assigns three errors for our review: "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT CITY OF CLEVELAND'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHERE PLAINTIFF-APPELLEES FAILED TO PRESENT SUFFICIENT EVIDENCE UPON WHICH REASONABLE MINDS COULD CONCLUDE THAT DEFENDANT-APPELLANT'S EMPLOYEE, DR. CLAYBORNE JOHNSON, DEVIATED FROM THE REQUISITE STANDARD OF SKILL, CARE, AND DILIGENCE THAT OTHER PHYSICIANS WOULD HAVE EXERCISED UNDER LIKE OR SIMILAR CIRCUMSTANCES.

"II. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT CITY OF CLEVELAND'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHERE PLAINTIFF FAILED TO

PRESENT SUFFICIENT EVIDENCE UPON WHICH REASONABLE MINDS COULD CONCLUDE THAT THE ALLEGED ERRONEOUS DIAGNOSIS, CARE, AND TREATMENT BY DEFENDANT-APPELLANT'S EMPLOYEE, DR. CLAYBORNE JOHNSON, WAS THE DIRECT AND PROXIMATE RESULT OF PLAINTIFF'S DECEDENT'S DEATH.

"III. THE BASIC POLICY DECISION TO CLOSE THE HOUSE OF CORRECTIONS INFIRMARY FROM 11 P.M. TO 7 A.M. DUE TO LACK OF MEDICAL PERSONNEL ON THE 11-7 SHIFT, AND PLAINTIFF'S DECEDENT'S RESULTING TRANSFER TO A-RANGE INVOLVED THE EXERCISE OF AN EXECUTIVE OR PLANNING FUNCTION AND, IS THEREFORE, IMMUNE FROM LIABILITY."

### I. and II.

The City's first two assigned errors argue the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict. They will therefore be addressed together.

It is noted at the outset that:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. *Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions."* (Emphasis in original.) *Osler v. Lorain* (1986), 28 Ohio St. 3d 345, 347, quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275. The granting of such motions are not easily obtainable. See *Osler, supra.*

The City essentially argues the trial court erred in denying its motion for a directed verdict. Specifically, the City contends that Dr. Johnson's actions did not amount to negligence because he was available by telephone over the holiday weekend. Assuming *arguendo* Dr. Johnson was negligent, the City then argues his negligence was not the proximate cause of decedent's death in three respects:

(1) the treatment decedent received from Dr. Bhardwaj at Suburban Community Hospital was an intervening act sufficient to break the chain of causation for many negligence on the part of Dr. Johnson prior to the decedent going to the hospital;

(2) plaintiff's medical expert's testimony failed to establish Dr. Johnson's care, treatment and diagnosis were substandard as his testimony was based upon a fatally defective hypothetical question; and

(3) Dr. Johnson had no reason to believe decedent's condition worsened over the holiday weekend and therefore would not have had reason to keep the infirmary open. The City's arguments are without merit.

To establish her medical malpractice claim against Dr. Johnson, plaintiff had the burden of proving through expert testimony (1) the standard of care in the medical community; (2) an act by Dr. Johnson which failed to meet the community standards; and (3) decedent's death was the direct and proximate result of Dr. Johnson's failure to meet the community standard. *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127. Furthermore, it is well-settled that the establishment of proximate cause through medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence. Opinions expressed with a lesser degree of certainty must be excluded as speculative. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St. 3d 367, 369; see, also *Cooper v. Sisters of Charity* (1971), 27 Ohio St. 2d 242, 252; *D'Amico v. Hawwa M.D.* (March 9, 1989), Cuyahoga App. Nos. 55053 and 55177, unreported, at 6.

Civ. R. 50(A) (4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 68, the court stated:

"When a motion for directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. *** This *** assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence."

Civ. R. 50(B) provides that:

"Motion for Judgment Notwithstanding the Verdict. Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; ***.

"If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. ***"

Similarly, a trial court must overrule a motion for judgment notwithstanding the verdict if there was sufficient evidence to permit reasonable minds to reach different conclusions. *O'Day v. Webb* (1972), 29 Ohio St. 2d 215; *McComis v. Baker* (1974), 40 Ohio App. 2d 332, 335. Such a motion calls upon the trial court to determine the one issue of whether there is any evidence of substantial probative value in support of the opposing party's claim or defense. *Id.*; see, also, *Bell v. Giamarco* (1988), 50 Ohio App. 3d 61, 62. Importantly, the competency or weight of the evidence is not in issue. *Osler, supra,* at syllabus; *McComis, supra,* at 335.

Moreover, the existence of negligence and proximate cause are questions of fact for jury determination. *Strother v. Hutchinson* (1981), 67 Ohio St. 2d 282, 288, citing *Clinger v. Duncan* (1957), 166 Ohio St. 217.

In this case, the evidence, including expert medical testimony, adduced at trial revealed that Dr. Johnson was responsible for the infirmary's functioning; that he diagnosed and treated the decedent for an upper respiratory infection; that the decedent's symptoms were indicative of acute asthma and not an upper respiratory infection; that he knew of decedent's history of asthma and did not request his medical records which would have revealed a long history of acute asthma; that he prescribed and gave tranquilizers to the decedent which, by medical journals, is contra-indicated for asthmatics as it increases anxiety levels by reducing oxygen intake and preventing carbon dioxide expiration, thus making breathing more difficult; that Dr. Johnson indeed knew the decedent's asthmatic condition was worsening because he tripled his tedral prescription while at the infirmary; and he failed to comply with Dr. Bhardwaj's after-care instructions that the decedent was to remain in the infirmary under medical surveillance for five days, by closing down the infirmary over the holiday weekend when he could have requested that it stay open. We find the evidence was sufficient to overcome the City's motions for a directed verdict and judgment notwithstanding the verdict.

Also, our review of the hypothetical question posed to plaintiff's medical expert does not reveal it is fatally defective. A hypothetical question is improper only where it assumes facts not in evidence, unfairly reflects the facts in evidence or omits facts in evidence which are so vital to the conclusion of the expert that the question manifestly fails to present the facts in their just relationship. *State v. Minor* (1988), 47 Ohio App. 3d 22, 26, citing *Utility Coals, Inc. v. Fruehauf Corp.* (July 20, 1971), Franklin App. No. 71AP-28, unreported; *Mayhorn v. Pavey* (1982), 8 Ohio App. 3d 189. Moreover, the propriety of a hypothetical question lies largely within the discretion of the trial court. *Id.,* at 27.

The "reasonable minds" test of Civ. R. 50(A) (4) and (B) required the trial court only to determine whether or not there existed any evidence of substantial probative value in support of plaintiff's allegations that Dr. Johnson breached his duty of care owed the decedent and that his negligence proximately caused his death. *Mayhorn, supra,* at 191, citing *Ruta, supra.* Further, a hypothetical question need not include any particular number of facts in order to be valid. *Camden v. Miller* (1986), 343 Ohio App. 3d 86, 90-1. In this case, the trial court did not abuse its discretion in allowing the hypothetical question.

As such, the hypothetical question in this case contained sufficient facts that were in

evidence and did not omit facts in evidence that were so vital to the expert's conclusion.

Accordingly, the first and second assigned errors are without merit.

### III.

The City's third assigned error argues that it is immune from liability because the decision to close the infirmary was a basic policy decision within the ambit of a legislative-executive function. Specifically, the City argues the hiring and deployment of personnel to staff the infirmary is a legislative-executive decision or planning function entitled to immunity for negligent acts of its employees.

The City relies on the Ohio Supreme Court's holding in *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, paragraph two of the syllabus, wherein the court held:

"*** no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities."

Hence, only if a municipality is engaged in legislative, judicial or executive functions characterized by a high degree of official discretion are its actions immune from liability. *Mitchell, et al. v. Cleveland Electric Illuminating Co., et al.* (Feb. 6, 1986), Cuyahoga App. Nos. 49557, 59448, 49595, 49596, unreported, at 20.

We cannot conclude that Dr. Johnson's decision not to keep the infirmary open during the holiday weekend and not to seek permission from Commissioner Harden to keep it open was a governmental function characterized by a high degree of official discretion such that it was protected by qualified sovereign immunity.

First, it is unknown whether the jury found negligence on the part of Dr. Johnson solely on the basis of the decision to keep the infirmary closed for the holiday weekend.

There was other evidence of negligence in the decedent's diagnosis and treatment to have allowed the jury to find Dr. Johnson negligent on other grounds, as discussed, *infra.*

Second, assuming the jury's decision finding negligence on Dr. Johnson's part was premised on the closing of the infirmary, the City is not entitled to qualified sovereign immunity. The closing of the infirmary is not the kind of basic policy decision which shields a municipality from liability. Instead, the decision to close the infirmary and place the decedent in the A-range, in blatant disregard of the instructions received from Dr. Bhardwaj, was a professional judgment call and did not reflect a policy decision involving the exercise of a legislative, judicial or executive planning function.

Accordingly, the third assignment of error is without merit.

### CROSS-APPEAL

Plaintiff timely perfected a cross-appeal, assigning as error the following:

"I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN SUBMITTING TO THE JURY AN INSTRUCTION AND INTERROGATORY ON THE ISSUE OF WHETHER ROBERT REESE WAS NEGLIGENT AND THEREBY PROXIMATELY CONTRIBUTED TO HIS DEATH.

"II. THE VERDICT RETURNED BY THE JURY, FINDING THAT ROBERT REESE WAS CONTRIBUTORILY NEGLIGENT TO THE EXTENT OF 40 PERCENT AND THAT HIS ALLEGED NEGLIGENCE PROXIMATELY CONTRIBUTED TO HIS DEATH IS AGAINST THE WEIGHT OF THE EVIDENCE OF RECORD.

"III. THE TRIAL COURT ERRED IN REFUSING TO TAX AS COSTS ALL LITIGATION EXPENSES CLAIMED BY PLAINTIFFS BY MOTION FILED ON AUGUST 29, 1988."

### I.

Plaintiff's first assigned error argues the trial court erred in instructing the jury on contributory negligence since the City waived the defense by failing to affirmatively plead it, raise it in its answer and amended answer or argue it in its trial brief.

The City directs this court's attention to Civ. R. 8(C) and 12(H).

Civ. R. 8(C), affirmative defenses, provides that:

"*** In pleading to a preceding pleading, a party shall set forth affirmatively contributory negligence, ***"

Civ. R. 12(H), Waiver of defense and objections, provides:

"(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (a) if omitted from a motion in the circumstances described in subdivision (G), or (b) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course.

"(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

"(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

Before we address the merits of plaintiff's argument, we first note that plaintiff's counsel made a motion that there be no instructions concerning contributory negligence, subject to defendants amending their answer. (T. 942) This, we find, amounted to an objection by plaintiff's counsel on the ground that contributory negligence was not within the issues made by the pleadings. The motion was denied. Thereafter, the City moved to amend its answer to conform with the evidence and to add the defense of comparative negligence. (T. 944) The court granted the City's motion.

Pursuant to Civ. R. 15(B), a party may, upon motion at any time, even after judgment, request that the pleadings be amended to conform to the evidence and issues raised, so long as the "*** evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, ***."

Therefore, plaintiff's counsel's motion amounted to an objection that the jury not be instructed on contributory negligence, as it was not pleaded in the City's answer. The City then made a motion to amend their answer to include the defense of contributory

negligence, which was granted. Accordingly, the jury was properly instructed upon contributory negligence.

Assuming *arguendo* that plaintiff's request did not amount to an objection on the grounds that contributory negligence was not within the issues made by the pleadings, then the court could not have properly allowed the City's request for an amendment. Civ. R. 15(B).

Assuming these set of facts, plaintiff argues that, pursuant to Civ. R. 12(H), the City waived the defense of contributory negligence by failing to properly raise it.

Civ. R. 12(H) "*** is aimed primarily at determining when the defenses discussed in Civ. R. 12(B) may be waived and does not support the broad theory asserted by ***" plaintiff.[2] *Millar v. Bowman* (1983), 13 Ohio App. 3d 204, 206. The defense of contributory negligence is not governed by Civ. R. 12(B). *Id.* Instead, Civ. R. 15(B) is applicable and provides in relevant part:

"*** When issues not raised by the pleadings are tried by express or implied consent of the parties, *they shall be treated in all respect as if they had been raised in the pleadings.* *** *Failure to amend as provided herein does not affect the result of the trial of these issues.* ***" (Emphasis added). See, *Id.*

Hence, "Civ. R. 15(B) provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. This is so whether or not the pleadings are amended to include the introduction of evidence outside the pleadings." *Voros v. Piechuta* (Mar. 12, 1987), Cuyahoga App. No. 51803, unreported, at 14; see, also, *Zimmie v. Zimmie* (Feb. 3, 1983), Cuyahoga App. Nos. 43299, 44803 & 44804, Unreported at 4; *Shelby Mutual Ins. Co. v. Langston* (March 10, 1983), Cuyahoga App. No. 45220, unreported, at 7. Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed absent a showing of an abuse of discretion. *State, ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St. 3d 41, paragraph three of the syllabus. The record reflects that the parties and the trial court regarded the issue of contributory negligence as having been tried. We therefore conclude that plaintiff consented to litigate the issue by recognizing that it en-

tered the case; by addressing decedent's negligence in declining Mr. Sudbury's alleged offer to take him to the hospital and by allowing evidence, without objection, to alleged instances of decedent's negligence in not appearing at scheduled times for his medication. Taken together, the parties expressed an understanding that the evidence was aimed at the issue of contributory negligence. See, *Evans, supra; Voros, supra,* at 15.

Accordingly, plaintiff's first assigned error is without merit.

## II.

Plaintiff's second assigned error argues the jury's verdict of plaintiff's contributory negligence is against the manifest weight of the evidence. Specifically, plaintiff contends that there is a lack of any evidence of contributory negligence other than self-serving testimony of the City's employees.

The authority of an appellate court to reverse the judgment of a trial court based solely on a question of the weight of the evidence is limited. In *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 3d 77, 79-80, the supreme court stated that, "[while] *** in some instances an appellate court is dutybound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct."

Contributory negligence is "any want of ordinary care on the part of the person injured, which combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred. *Brinkmoeller v. Wilson* (1975), 41 Ohio St. 2d 223, 226." *Crawford v. Halkovics* (1982), 1 Ohio St. 3d 184, 186.

The City presented the uncorroborated testimony of Mr. Sudbury, a guard at the Workhouse, that he offered to take decedent to the hospital several hours before he died, but decedent declined the offer. There was also testimony from nurses employed at the workhouse that the decedent did not always respond to the medication call. That is to say, the decedent did not always receive his medication at his scheduled times for reasons that are unknown.

The trial court obviously chose to believe the testimony of Mr. Sudbury and the nurses. The weight of the evidence and the credibility of the witnesses is for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230.

Upon a full review of the record, we hold that there was some competent, credible evidence that the decedent was contributorily negligent.

Accordingly, plaintiff's second assigned error is without merit.

## III.

Plaintiff's third assigned error argues the trial court erred in denying them certain costs. Specifically, plaintiff contends she was entitled to:

(1) arbitration fees of $2250 of Richard F. Patton and $1125 of Curtiss Isler;

(2) court reporter fee of $135 at arbitration, and;

(3) transportation fee of $64.00 for jury view of the workhouse.

Civ. R. 54(D) states:

"Costs. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."

This court in *Jones v. Pierson* (1981), 2 Ohio App. 3d 447, 449, established a two-prong test for awarding costs pursuant to Civ. R. 54(D):

"(1) The trial court must determine if it is a necessary litigating expense; and

"(2) If so, whether the litigating expense is reasonable to tax as costs in a particular case." See, also, *Bookatz v. Kupps* (1987), 39 Ohio App. 3d 36.

Civ. R. 54(D) allows the assessment of costs such as court reporters' services where the expenses were necessary and vital expenditures of litigation. *Bookatz, supra,* at 39; *Jones, supra,* at 449; *Horne v. Clemens* (1985), 25 Ohio App. 3d 44, 46; *Gilley v. Huron Road Urgent Care Center, et al.* (May 24, 1990), Cuyahoga App. No. 57588, unreported, at 5.

A trial court's discretion to disallow costs is restricted to refusing to tax litigating costs only where such expense is unusual in type or amount which, because of the prevailing party's conduct makes the assessment against the non-prevailing party inequitable. *Horne supra,* at 46.

R.C. 2711.21 governs medical malpractice arbitrations as defined in R.C. 2305.11(D)(3) and provides in relevant part:

"(A) Upon the failing of any medical claim as defined in division (D)(3) of section 2305.11 of the Revised Code, the controversy shall be submitted to an arbitration board consisting of three arbitrators to be named by the court. *** *Each member of the board shall receive a reasonable compensation based on the extent and duration of actual service rendered, and paid in equal proportions by the parties in interest.* In a claim accompanied by a poverty affidavit, the cost of the arbitration shall be borne by the court." (Emphasis added).

Therefore, pursuant to R.C. 2711.21(A) statute, the trial court properly denied plaintiff's request for arbitration fees. Similarly, we cannot hold the trial court abused its discretion in denying the court reporter's fee and the fee to transport the jury to the situs as these were not vital and necessary expenditures of litigation as contemplated by this court in *Jones, supra.* See, *Fisher v. Consolidated Rail Corp., et al.* (Sept. 20, 1990), Cuyahoga App. Nos. 57521, 58623, unreported.

Accordingly, plaintiff's third assignment of error is without merit.

*Judgment affirmed.*

KRUPANSKY, J., and SWEENEY, J., concur.

---

[1] Expert witness Dr. Jeffrey Feldstein testified that, in layman's terms, the cause of death was bronchial asthma which decedent had for a long period of time, inflammation of the bronchi secondary to the asthma and a chronic increase in the size of the right portion of the heart.

[2] Civ. R. 12(B) reads in relevant part:

"(B) How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction of the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19 or Rule 19.1."