OPINION
{¶ 1} The Ohio River Road Runners Club (hereinafter "the Club") is a social club for runners. In 2000, plaintiffs-appellants, Mike Griffis and Anthony Ninotti were members of the Club as was defendant-appellee, Ken Klein.
 {¶ 2} In 2000, Griffis decided to run for president of the Club. He attended a meeting at which nominations were made for the positions of the Club officers as well as the Board of Trustees. Jan Klein — who was then the girlfriend of Ken Klein — won the nomination for president.
 {¶ 3} After the nominations were made, the matter was presented to the Club for elections during a Club picnic. According to the record, the nominees for all offices were presented as a slate which could be accepted or rejected in its entirety. A group of members who were apparently dissatisfied with the nomination of Jan Klein had prepared ballots which were distributed at the picnic prior to the vote. The ballot listed every candidate on the slate and permitted each voter to cast a vote for individuals. Following the picnic, the Club members rejected the entire slate. Therefore, a special board meeting was held during which the trustees decided to conduct a second election.
 {¶ 4} Prior to the second election, Klein then sent a two-page letter to Club members in which he campaigned for various members who were running for elected positions. The letter read, in pertinent part, as follows:
 {¶ 5} "* * * At the annual meeting/club picnic, an unapproved ballot (slate) was circulated by several Griffis supporters including former Vice-President, Kevin Walsh, and trustee, Tony Ninotti. Before these ballots were distributed, most were marked to indicate a vote for their candidates for officers and trustees. This phony ballot was distributed only to select members. It was an attempt to create confusion and mislead the membership. It was prejudicial to the voting process and completely disregarded the rules set out in the bylaws. Unfortunately, their tactic of misdirection and confusion was successful. After counting the official vote, the slate of nominated trustees was not accepted by a vote of 63 to 30. These 63 members, suggesting that they spoke for you, overturned the trustees. * * *
 {¶ 6} "* * * We support sportsman like conduct. We joined this club to promote running as a healthy and fun activity. The Board of Trustee's monthly meetings have always been open to the general membership. If there had been legitimate concerns, the board meeting was the proper place to address them. This whole issue was not an issue until a candidate, who has no recorded volunteer points in the past 5 years, failed to be elected to the office of president.
 {¶ 7} "Many of us work endless hours, often behind the scene, to make this club a success. Please don't let the few speak for you. Don't let a disgruntled 3% dictate club policy. Consider the facts. Investigate for yourself. Form your own opinion, and most of all, VOTE.
 {¶ 8} "* * * We recommend a vote FOR no more than 17 of the following trustees. Many of these individuals give countless hours to build and maintain the quality events you expect. Needless to say, those nominees who actively participated in prejudicial acts towards this club are not listed in this group. Their actions speak for their integrity and in our opinion, they do not warrant your consideration."
 {¶ 9} The letter then set forth a list of nominees along with their history of activities and "volunteer points" within the Club. It then continued on as follows:
 {¶ 10} "We strongly recommend that you do not vote for those people who clearly showed disregard for the club by their actions. They sought to confuse and do not deserve a leadership position within the Ohio River Road Runners Club. The following names will also be on the ballot: * * * Mike Griffis * * * Tony Ninotti * * * Kevin Walsh * * *."
 {¶ 11} Finally, the letter contained a disclaimer at the bottom which stated: "This mailing was prepared without the use of Proprietary club information and was paid for by concerned club members."
 {¶ 12} The board subsequently sent a letter to the members disavowing the contents of the Klein letter. A newsletter was also generated by the board stating that Klein's letter was not an official club document.
 {¶ 13} Griffis, Ninotti and Walsh filed suit against Klein seeking damages for defamation and intentional infliction of emotional distress. Following trial, the jury returned a verdict in favor of Klein. Griffis and Ninotti appeal.
 {¶ 14} Griffis and Ninotti now appeal asserting the following assignments of error:
 {¶ 15} "The trial court erred in overruling plaintiffs' motion for judgment notwithstanding the verdict and for a new trial.
 {¶ 16} "The trial court erred in determining that the white letter was not libelous per se.
 {¶ 17} "The trial court erred in ruling that the white letter was protected by qualified privilege.
 {¶ 18} "The trial court erred in granting a directed verdict in favor of defendant on the issue of intentional infliction of emotional distress.
 {¶ 19} "The trial court erred in giving a jury instruction regarding freedom of speech.
 {¶ 20} "The trial court erred in failing to admonish Defendant's counsel and promptly instructing the jury to disregard his improper actions."
The First Assignment of Error:
 {¶ 21} In this Assignment of Error, Griffis and Ninotti contend that the trial court erred by denying their motion for judgment notwithstanding the verdict and for a new trial. In support, they argue that there was "substantial competent evidence" to support their claim for defamation because "essentially every witness or party testified at trial that the statements published in the letter about Plaintiffs were false."
 {¶ 22} We review a trial court's ruling on a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) de novo. Schafer v.RMS Realty (2000), 138 Ohio App.3d 244, 257-58, citations omitted. When considering a motion for judgment notwithstanding the verdict, a court construes the evidence and all reasonable inferences most strongly in favor of the nonmoving party. Posin v. A.B.C. Motor Court Hotel
(1976), 45 Ohio St.2d 271, 275, citations omitted. This review does not involve weighing the evidence. McComis v. Baker (1974),40 Ohio App.2d 332, 334-35. Rather if we find substantial evidence to support Klein's case, upon which reasonable minds might reach different conclusions, we must affirm the trial court's decision to deny the motion. Id.
 {¶ 23} Defamation is defined as a "false publication causing injury to a person's reputation, exposing that person to public hatred, contempt, ridicule, shame or disgrace or affecting the person adversely in his or her trade, business, or profession." Cooke v. United Dairy Farmers,Inc., Franklin App. No. 04-AP-817, 2005-Ohio-1539, ¶ 30. Defamation includes both libel and slander. Id.
 {¶ 24} To prevail on a libel claim, a plaintiff must demonstrate the existence of a false and defamatory statement published without privilege to a third party with fault of at least negligence on the part of the publisher. Gosden v. Louis (1996), 116 Ohio App.3d 195, 206. "As with any libel claim, our initial inquiry is whether the alleged defamatory statements are opinion or fact." Jacobs v. Budak, 156 Ohio App. 3d 160,2004-Ohio-522, ¶ 21. The determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court. Id., ¶ 23. If the defamatory language used is opinion and not fact it is constitutionally protected speech in Ohio. Id., citation omitted.
 {¶ 25} In this case, the trial court determined which portions of the letter constitute statements of fact and which portions are opinion. The trial court then instructed the jury to consider only the portions of the letter that it found to constitute statements of fact. Griffis and Ninotti have not appealed the trial court's decision regarding fact and opinion statements.
 {¶ 26} The jury found that the letter did not defame Griffis. Our review of the letter reveals that none of the portions ruled to be statements of fact are even arguably directed at Griffis. Therefore, we find that the evidence before us supports the jury's determination that the letter was not defamatory with regard to Griffis.
 {¶ 27} The jury found that the letter was defamatory with regard to Ninotti. However, the jury was instructed that it had to find that Klein acted with actual malice in order to assess any damages. The jury declined to find Klein liable based upon its determination that he did not act with actual malice.
 {¶ 28} As noted in the third assignment of error, the trial court erred in determining that the letter was protected under the defense of a qualified privilege. Therefore, the trial court erred by requiring the jury to find actual malice in determining liability. Thus, the instruction and attendant verdict form regarding actual malice was incorrect and should not have been given to the jury. We further find that the presentation of this instruction resulted in prejudice because it required the jury to consider a higher degree of fault — actual malice — than would otherwise be required. Since this instruction was erroneous and prejudicial, we find that Ninotti's argument is well-taken. Had the jury not been required to find actual malice, it might have found Klein liable and then might have decided to award some amount of damages to Ninotti.
 {¶ 29} We find that the argument in this assignment of error is well-taken with regard to Ninotti and that it lacks merit with regard to Griffis. Accordingly, the first assignment of error is sustained in part and overruled in part.
The Second Assignment of Error:
 {¶ 30} Griffis and Ninotti contend that the trial court erred by rendering a directed verdict on the issue of whether the publication was libelous per se. The trial court ruled that the letter did not constitute libel per se because it did not accuse Griffis and Ninotti of committing a crime.
 {¶ 31} Our review of the trial court's grant of a directed verdict is performed on a de novo basis. Schafer, supra at 257. A motion for a directed verdict must be granted where the court, construing the evidence most strongly in favor of the non-moving party, finds that reasonable minds could come to but one conclusion, upon any determinative issue, and that conclusion is adverse to the non-moving party. Texler v. D.O.Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677, 679,1998-Ohio-602. A motion for a directed verdict must be denied where there is substantial, competent evidence in support of the non-moving party, upon which reasonable minds could reach different conclusions. Id. In addition, the court must not consider the weight of the evidence or the credibility of the witnesses, but must determine whether there exists any evidence of substantial, probative value in support of the non-moving party. Id. A motion for a directed verdict presents a question of law, in that the materiality of the evidence is examined rather than the conclusions to be drawn from the evidence. Id., at 68. With this standard in mind, we turn to the issue of whether a directed verdict was merited.
 {¶ 32} Once a plaintiff has demonstrated the existence of defamation, it must then "be determined if the libel is libel per se, and thus the defamation appears from the words used, or libel per quod, where the defamation is subject to interpretation, through innuendo between an innocent or harmless meaning and libelous one." A B-Abell ElevatorCo., Inc. v. Columbus/Central Ohio Bldg. And Constr. Trades Counsel
(Sept. 30, 1993), Franklin App. Nos. 92AP-1540, 92AP-1541. "Libel per se is libel by the very meaning of the words used; whereas, libel per quod depends upon interpretation, inducement or innuendo." Stokes v. Meimaris
(1996), 111 Ohio App.3d 176, 184. In other words, if a statement can be construed in an innocent manner or a libelous manner, it constitutes libel per quod. This issue is relevant because if a statement is determined to be libel per quod, then special damages must be proved. Id. Whether a defamation is per se or per quod is a question of law for the trial court. Matalka v. Lagemann (1985), 21 Ohio App. 3d 134, 136, citations omitted. To be defamatory per se, the language used must be such that the trial court can presume as a matter of law that it tends to degrade or disgrace the person of whom it is written or that it holds that person up to hatred, contempt, or scorn. Bram v. M. Weingold Co.
(Mar. 30, 2000), Cuyahoga App. No. 76041, citation omitted.
 {¶ 33} The trial court was correct in finding that a statement falsely accusing a person of a crime is libelous per se. See, Shepard v. GriffinServices, Inc., Montgomery App. No. 19032, 2002-Ohio-2283. Therefore, to the extent that the letter in this case did not allege any criminal activity, the trial court's decision to grant a directed verdict was correct. However, the trial court should not have ended its inquiry on that determination. Instead, the trial court was required to decide whether the language in the letter was ambiguous and subject to an innocent construction or whether the language was defamatory on its face.
 {¶ 34} We conclude that the trial court erroneously determined that the letter was not libelous per se simply because it did not allege any criminal activity. The trial court did not determine whether the language used was ambiguous, and thus, did not make a proper determination of whether the letter constituted libel per se or per quod. Moreover, we conclude that a reasonable person could find that the letter constituted libel per se because it directly accused Ninotti of involvement in the distribution of pre-marked election ballots during the Club's election. Therefore, we conclude that the trial court erred by rendering a directed verdict on this issue. Accordingly, the second assignment of error is sustained.[1]
 Griffis's and Ninotti's Third Assignment of Error:
 {¶ 35} Griffis and Ninotti contend that the trial court erred in its determination that the letter was protected by the defense of qualified privilege.
 {¶ 36} "A statement falls within the purview of a qualified or conditional privilege where a commonality of interest exists between the publisher and the recipient and the communication is of a kind reasonably calculated to protect or further that interest." 35 Ohio Jurisprudence 3d, Defamation And Privacy, § 76, page 506, citing Creps v. Waltz
(1982), 5 Ohio App. 3d 213. "To establish a qualified publication the defendant must show that (1) the publication was made in good faith, (2) there was an interest to be upheld, (3) the publication was limited in scope to that interest, (4) the publication was made on the proper occasion, and (5) the publication was done in a proper manner and to the proper parties." Baker v. Spinning Road Baptist Church, Inc. (Sept. 11, 1998), Montgomery App. No. 17052, unreported. A finding of privilege heightens the required degree of fault by requiring a finding of actual malice. Davis v. City of Cleveland, Cuyahoga App. No. 83665,2004-Ohio-6621, ¶ 44, citation omitted.
 {¶ 37} From our review of the record, we conclude that Klein did have an interest to uphold; specifically, he had an interest in ensuring that the Club's elections were conducted in a fair and proper manner. We also find that the publication was limited in scope to that interest because the evidence shows that the letter was confined to issues regarding the election.
 {¶ 38} However, after reviewing the record in a light most favorable to Griffis and Ninotti, we conclude that they provided evidence sufficient to bring into question the issue of whether the publication was made in good faith, on the proper occasion or in the proper manner. Specifically, there is evidence indicating that prior to sending the letter, Klein was aware that the Club's Board of Trustees had stated that no communications should be disseminated regarding the election. Despite the Board's ban on election communications, Klein used the Club's member list to obtain member addresses. This list was not available to all members, but Klein had access to it. Further, Klein did not sign the letter and instead sent it out anonymously. The letter included a statement that it was being published by concerned Club members. Although the evidence indicates that Klein was the sole author of the letter, a review of the letter reveals that he utilized pronouns such as "we" and "us" in the letter which conveyed the sense that the letter was the product of more than one person.
 {¶ 39} Based upon the record, we conclude that the trial court's decision to render a directed verdict on this issue was improper. A jury could find that, given the circumstances, the letter was not protected by the defense of privilege.
 {¶ 40} Accordingly, the third assignment of error is sustained.
Griffis and Ninotti's Fourth Assignment of Error:
 {¶ 41} Griffis and Ninotti contend that the trial court erred by rendering a directed verdict against them on their claim for emotional distress.
 {¶ 42} To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show the following: (1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. Phung v. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408,410, citation omitted. Extreme and outrageous conduct is conduct that "goes beyond all possible bounds of decency and is so atrocious that it is utterly intolerable in a civilized community." Yeager v. Local Union20 (1983), 6 Ohio St.3d 369, 375.
 {¶ 43} Griffis and Ninotti contend that the trial court's decision to render a directed verdict on this issue was erroneous because it was upsetting to their friends and family. However, we agree with the trial court's determination that this evidence simply does not demonstrate that Klein's conduct was extreme and outrageous.
 {¶ 44} The fourth assignment of error is overruled.
The Fifth Assignment of Error:
 {¶ 45} Griffis and Ninotti contend that the trial court erred issuing the following instruction to the jury:
 {¶ 46} "The law does not intervene in every case where feelings are hurt. There is still freedom to express an unflattering opinion. Every citizen may freely speak, write and publish statements on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or the press."
 {¶ 47} Griffis and Ninotti argue that this instruction "likely misled the jury * * * because it informs the jury that not all speech is actionable * * * [and tended] to make the jury believe the court was considering the letter protected by the First Amendment."
 {¶ 48} Griffis and Ninotti do not contend that this instruction is incorrect in its text. And indeed, we note that it does set forth, in part, an accurate statement of the protection provided in Article I, Section 11 of the Ohio Constitution. Therefore, insofar as the instruction was a correct statement of the law, we cannot say that its inclusion was error. However, we do note that such an instruction is not necessary. The role of a juror is to decide questions of fact. Robb v.Lincoln Publishing, Inc. (1996), 114 Ohio App. 3d 595, 623. "The purpose of jury instructions is to properly guide the jury in performing that task." Id. "The constitutional protections afforded the rights of freedom of speech and freedom of the press present no issues of fact for determination by the jury." Id. Therefore, "[a trial] court [is] not required to instruct the jury on [the freedom of speech or freedom of the press] or the protections they afford [and can properly decline] to give an instruction, the text of which merely argue[s] the force and purpose of these constitutional protections without presenting any question of fact for the jury to decide." Id. At 623.
 {¶ 49} The inclusion of this instruction was unnecessary. Further, we note that under other circumstances, such an instruction may cause undue confusion on the part of jurors and thereby cause prejudicial error. However, in this case, we cannot conclude that the trial court erred by including the instruction.
 {¶ 50} The fifth assignment of error is overruled.
The Sixth Assignment of Error:
 {¶ 51} Griffis and Ninotti contend that the trial court abused its discretion by failing to admonish defense counsel's use of their exhibit and for failing to instruct the jury with regard thereto.
 {¶ 52} At trial, counsel for Griffis and Ninotti utilized an enlarged exhibit of the Klein letter and asked different witnesses to place colored stickers on the portions of the letter which they deemed false. The exhibit was left in front of the jury during closing arguments during which counsel for Klein proceeded to remove each sticker following his argument as to why each statement was not false. Counsel for Griffis and Ninotti objected to defense counsel's actions, and requested that the trial court admonish the jury to disregard counsel's actions. The trial court declined.
 {¶ 53} We find no error in the trial court's decision to overrule the objection. Had defense counsel removed the exhibit from a stack of exhibits on plaintiffs' table we would be more inclined to find defense counsel's actions objectionable. However, since the exhibit was left available, and since defense counsel did not "tamper" with this evidence, we find nothing objectionable.[2] Therefore, the sixth assignment of error is overruled.
 {¶ 54} The first Assignment of Error of error is sustained with regard to Ninotti and overruled with regard to Griffis. The second and third assignments of error are sustained and the fourth, fifth and sixth assignments of error are overruled. The judgment is affirmed with regard to Griffis and reversed with regard to Ninotti. This matter is remanded to the trial court for further proceedings.
Grady, J., and Donovan, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Given our disposition of Griffis's claim in the first assignment of error, we note that all remaining claims are rendered moot with regard to Griffis and that we address them solely in regard to Ninotti.
[2] Defense counsel did not alter the actual exhibit. Instead, he merely disposed of removable stickers that had been added to the exhibit during the course of trial. Counsel for Griffis and Ninotti was perfectly capable of replacing the stickers prior to the submission of the case to the jury.