[Cite as *State v. McMurray*, 2025-Ohio-196.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

    Appellee

v.

WILLIAM McMURRAY

    Appellant

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 30168

Trial Court Case No. 2023-TRC-2943

(Criminal Appeal from Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on January 24, 2025

. . . . . . . . . . .

MICHAEL MILLS, Attorney for Appellant

STEPHANIE L. COOK, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant William McMurray appeals from his convictions in the Dayton Municipal Court for operating a vehicle while under the influence of alcohol or drugs (OVI), a violation of R.C. 4511.19(A)(1)(b), and a turn signal violation. For the

reasons that follow, the judgment of the trial court will be affirmed.

I.      **Facts and Procedural History**

{¶ 2} In the early morning hours of June 10, 2023, Dayton police officers were patrolling on North Main Street when they observed a Chevy Impala "brake check" a truck that was traveling behind it, slowing down to approximately 15 mph before speeding back up again. A short time later, the Impala changed lanes without using its turn signal within the required distance. Based on those observations, the officers suspected that the driver of the Impala was impaired and initiated a traffic stop.

{¶ 3} Upon contacting the lone occupant of the vehicle (McMurray), officers detected the odor of alcohol. McMurray also exhibited verbal aggression toward the officers and had glossy, bloodshot eyes. Further, the officers noticed that McMurray had a can of Rhinegeist beer and a red Solo cup in the front seat cupholders. McMurray was then escorted out of the vehicle and led, angry and stumbling, to the police cruiser.

{¶ 4} Due to his aggressive behavior, McMurray was not given the chance to do any field sobriety tests; instead, he agreed to submit to a blood test at Kettering Hospital. After obtaining an OVI kit from the Ohio State Highway Patrol, a phlebotomist drew two vials of McMurray's blood, which she immediately placed back into the OVI test box. A Dayton police officer then transported the box to headquarters and placed it in the refrigerator.   McMurray was arrested for OVI and transported to the Montgomery County Jail.

{¶ 5} The sample was eventually tested at the Hamilton County Crime Lab, and the results showed .13755 grams of alcohol per 100 milliliters of blood. McMurray was

charged with two OVI offenses, under R.C. 4511.19(A)(1)(a) and (b), a seatbelt violation, and a turn signal violation.

{¶ 6} McMurray filed a motion to suppress, which was overruled after a lengthy hearing. The State later dismissed the OVI charged pursuant to R.C. 4511.19(A)(1)(a). The case then progressed to a jury trial in April 2024, after which McMurray was found guilty of the remaining OVI count. The trial court subsequently found him guilty of the turn signal violation but not guilty as to the seatbelt charge. McMurray was sentenced to a suspended jail term, three days in a driver intervention program, supervised probation, and a driver's license suspension. He was also ordered to pay fines, court costs, and jury expenses. This appeal followed.

## II.     Compliance with the Ohio Administrative Code

{¶ 7} In his first assignment of error, McMurray alleges that the trial court erred in overruling his motion to suppress because the State failed to demonstrate that the blood test was done in accordance with Adm.Code 3701-53-02(B)(1) and failed to show compliance with regulations regarding blood tubes.

{¶ 8} An appeal from a ruling on a motion to suppress presents a mixed question of facts and law. *State v. Ojezua*, 2016-Ohio-2659, ¶ 15 (2d Dist.). When considering a motion to suppress, the trial court has the role of trier of fact and is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Turner*, 2015-Ohio-4612, ¶ 10 (2d Dist.). As a result, we must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id*. "Accepting these facts as true, the appellate court must then independently determine, without deference to the

conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, quoting *State v. Koon*, 2015-Ohio-1326, ¶ 13 (2d Dist.). The trial court's application of law to the findings of fact is subject to a de novo standard of review. *Id.*

{¶ 9} McMurray first argues that the suppression decision of the trial court was improper because, according to Adm.Code 3701-53-02(B)(1), blood test measurements are to be expressed as equivalent to "grams by weight of alcohol per one hundred milliliters of whole blood, blood serum or plasma (grams per cent by weight)," and in this case, Katie Gabbard, the toxicologist who performed the test, testified that the result was "0.137 grams per 100 milliliters of blood." It appears his contention is that the results should have been invalidated because there was no specification as to whether the test measured whole blood, blood serum, or plasma.

{¶ 10} While the lab report only noted that the specimen tested was "blood" and that the blood had a concentration of 0.137 g/100 ML of ethyl alcohol, it can be inferred based on Gabbard's testimony that she was dealing with "whole blood." Gabbard testified that the testing of McMurray's sample was done using the "whole blood ethanol control," and there was nothing in the record that mentioned other steps taken to convert the whole blood into serum or plasma. We find no error here.

{¶ 11} But even assuming for the sake of argument that it was an error to consider the test to have measured whole blood, we would find there was still substantial compliance with the regulation. The Ohio Supreme Court has noted that "rigid compliance with the Department of Health regulations is not necessary for test results to be admissible." *State v. Burnside*, 2003-Ohio-5372, ¶ 34. Substantial compliance, however,

only excuses errors that are "clearly de minimis," meaning mistakes that are "minor procedural deviations." *Id.* In this case, Gabbard testified that she followed all the steps required by the regulations to conduct the test and told the court that she used the "whole blood ethanol control." Leaving out the word "whole" would be nothing more than a "minor procedural deviation."

{¶ 12} McMurray also takes issue with the physical vials or blood tubes used in this case, questioning their origin and reliability. He claims that the State did not comply with regulations because he believes that Adm.Code 3701-53-06 and 3701-53-07 should be read together to "require the state to keep documentation concerning the source and reliability of the blood tubes used to collect scientific evidence." Appellant's Brief at 7. Before we address McMurray's argument, it will be useful to examine the regulations.

{¶ 13} As pertinent to this case, Adm.Code 3701-53-06, titled "Collection and handling of blood, urine and oral fluid specimens," requires that blood to be drawn with a sterile, dry needle into a vacuum container with an anticoagulant according to the laboratory protocol. The anticoagulant-coated vacuum tubes include standard purple, blue, green, pink, tan, gray, yellow and white topped tubes. The containers are to be sealed in a way to detect tampering and labeled with the name of the subject, time and date of the collection, name or initials of the person collecting the sample, and the name or initials of the person sealing the sample. Adm.Code 3701-53-06(C),(F).

{¶ 14} Adm.Code 3701-53-07, "Laboratory requirements," states that the chain of custody and test results shall be identified and retained for not less than three years, and positive biological samples (like blood) must be kept for a period of not less than one year

from the report date. The regulation also mandates that labs successfully complete national proficiency testing, maintain a written manual of all analytical techniques used for testing, and that personnel be adequately trained and experienced. Adm.Code 3701-53-07(A),(B),(C),(D).

{¶ 15} McMurray's argument is that the two Administrative Code sections should be read together to require the State to keep documentation concerning the source and reliability of the blood tubes used to collect scientific evidence. This argument has no merit. First, the cited regulations are, *at best*, tangentially related. Adm.Code 3701-53-06 explains how law enforcement and medical personnel must collect and handle biological samples, while Adm.Code 3701-53-07 regulates how a toxicology lab must be run, including record retention and employee certification. Nothing in the regulations suggests that the State must keep track of where the collection tubes came from or document their reliability. Although the chain of custody and results of blood tests must be retained for a certain amount of time, the Administrative Code does not require the source of the collection tubes to be known and documented; there is just no connection between the two. Finally, we note that McMurray has provided no authority or case law to support his position.

{¶ 16} We decline to adopt McMurray's reading of the regulations and overrule his first assignment of error.

### III.    Expert Witnesses and Opinions

{¶ 17} McMurray's second assignment of error argues that the trial court erred in restricting defense counsel from questioning the crime lab representatives about the

manufacturer of the blood tubes. It appears he bases the argument on Evid.R. 702.

{¶ 18} According to Evid.R. 702, a witness may testify as an expert if the proponent demonstrates to the court that it is more likely than not that the witness's testimony relates to matters beyond the knowledge or experience or ken possessed by laypersons, the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education, and the testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: (1) the theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) the design of the procedure, test, or experiment reliably implements the theory; (3) the particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 19} "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Scott v. Yates*, 71 Ohio St.3d 219, 221 (1994).

{¶ 20} In this case, McMurray asserts that the court should not have allowed the State's witnesses testify to the results of the toxicology report because "the court knew that a core component of the test was lacking any reliable basis." This appears to be an attack using Evid.R. 702(C)(3). However, it does not appear that Evid.R. 702 applies because there were no expert witnesses. The State called Katie Gabbard, a toxicologist at the Hamilton County Coroner's Office, and Bob Topmiller, the chief of toxicology at the office, but never certified them as experts. Thus, any argument regarding a potential error

under Evid.R. 702 is inapplicable.

**{¶ 21}** Even if his argument is that the trial court should not have allowed the blood test results to come in because the vials were manufactured in China, we can find no evidence in the record that they were in any way defective.

**{¶ 22}** The second assignment of error is overruled.

### IV.     Jury Instructions

**{¶ 23}** In his third and final assignment of error, McMurray asserts that the trial court gave an improper jury instruction concerning the elements of OVI. He contends that the jury should have been told that the State must prove his blood-alcohol level *at the time he was actually driving* the Impala.

**{¶ 24}** The purpose of jury instructions is to guide the jury in deciding questions of fact based on the substantive law. *State v. Rac*, 2019-Ohio-893, ¶ 13 (2d Dist.); *Griffis v. Klein*, 2005-Ohio-3699, ¶ 48 (2d Dist.). And while a trial court has great discretion to decide how to fashion jury instructions, it must "present a correct, pertinent statement of the law that is appropriate to the facts" of the case. *State v. Gibson*, 2019-Ohio-1022, ¶ 21 (2d Dist.), quoting *State v. White*, 2015-Ohio-492, ¶ 46. "A trial court's decision to give or to withhold particular jury instructions is reviewed for an abuse of discretion." *Id.* at ¶ 22.

**{¶ 25}** According to the record, in the early stages of the trial, McMurray argued that the State had to prove his blood-alcohol level was above the limit while he was driving his car, and that he was consuming alcohol immediately before being stopped by the police. The State, at the close of testimony, sought a curative instruction because R.C.

4511.19(D)(1)(b) allows the suspect's blood to be drawn within three hours of the time of the alleged violation. The trial court agreed with the State, noting "[y]ou can't say the State of Ohio failed to establish at the exact moment the Defendant was operating a vehicle that his blood alcohol was (inaudible). That is not what the law requires. There's a three-hour window." Trial Tr. at 111.

{¶ 26} McMurray now argues that he was "barred from arguing against the central element of the offense before the jury as the trial court removed the requirement that the jury find a per-se offense occurred at the time he was operating a motor vehicle." Appellant's brief at 11. According to McMurray, "[i]In restricting [him] from arguing the weight of the evidence as to the blood result the trial court effectively changed the elements of the offense of per-se O.V.I. to be a per-se violation of a test within three hours of having operated a motor vehicle." Appellant's Brief at 11. We disagree.

{¶ 27} Initially, we note that the only evidence in the record of a "curative instruction" is the actual jury instruction given at the conclusion of the trial. The transcript jumps from the parties arguing about the issue to the court giving its instructions, and it told the jury:

> The Defendant is charged with operating a vehicle with a prohibited concentration of alcohol in his system in violation of R.C. 4511.19(A)(1)(b). Before you can find the Defendant guilty, you must find beyond a reasonable doubt that: on or about the 10th day of June 2023, in the City of Dayton, Montgomery County, Ohio, William McMurray operated a vehicle with a concentration of eight hundredths of one percent or more but less

than seventeen hundredths of one percent by weight per unit volume of alcohol in the Defendant's whole blood.

Trial Tr. at 118.

{¶ 28} Based on this, we cannot say that the trial court abused its discretion in giving this instruction. The instruction to the jury was substantially similar to the statute; the only difference was slight. R.C. 4511.19(A)(1)(b) states that "[n]o person shall operate any vehicle . . . if **at the time of** operation, the person has a concentration of eight-hundredths of one percent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood," and the instruction, as already noted, stated that to find McMurray guilty the jury must find that he "**operated a vehicle** with a concentration of eight hundredths of one percent or more but less than seventeen hundredths of one percent by weight per unit volume of alcohol in the Defendant's whole blood." There was no practical difference between the two.

{¶ 29} Further, to measure a person's blood-alcohol content at the exact time he or she was driving, as McMurray proposes, it would take an in-car device that constantly checked the driver's blood-alcohol level while actively operating the vehicle. And while roadside breath analysis is possible, officers testified that McMurray's behavior limited their ability to perform field sobriety tests. Determining a driver's blood-alcohol level *at the exact time* he or she is operating the vehicle is nearly impossible and, therefore, the legislature built into R.C. 4511.19 a time limit to collect the biological sample. As the United States Supreme Court has reasoned, "because a police officer must typically transport a drunk-driving suspect to a medical facility and obtain the assistance of

someone with appropriate medical training before conducting a blood test, some delay between the time of the arrest or accident and the time of the test is inevitable[.]" *Missouri v. McNeely*, 569 U.S. 141, 153 (2013).

**{¶ 30}** The trial court did not abuse its discretion when it gave the disputed jury instruction in this case. McMurray's third assignment of error is overruled.

### V.    Conclusion

**{¶ 31}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.