OPINION
{¶ 1} Defendant, James Henry, appeals from his conviction and sentence for felonious assault.
 {¶ 2} On the night of May 23, 2007, Brandon Garber, his girlfriend, Christina Wells, and his cousin, Defendant James Henry, went to Wize Guys sports bar in Kettering where they *Page 2 
had a few drinks and played pool. After leaving the bar they went to the Speedway station located at the corner of Woodman Drive and East Dorothy Lane. Christina Wells was driving, Brandon Garber was seated in the front passenger seat, and Defendant Henry was in the backseat. Defendant and Garber got out of the vehicle and went into the store. Wells remained in the vehicle.
 {¶ 3} Defendant returned to the vehicle and got into the front passenger seat. Garber next returned to the vehicle, stuck his head inside, asked Defendant why he was talking to his girlfriend, and told him to get in the back seat. Words were exchanged, and Defendant got out of the vehicle, approached Garber, and body slammed him to the ground. After Garber got up, Defendant punched him several times in the face. Defendant then got back inside the vehicle and tried to get Wells to drive off before police arrived, but Wells refused.
 {¶ 4} Defendant exited the vehicle again, approached Garber, and told him to apologize because Defendant had hurt his hand. Garber gave a snide reply and told Defendant that he would go to jail. Defendant hit Garber several more times in the face. Defendant then jumped into the back seat of the vehicle and again tried to persuade Wells to drive away. *Page 3 
Wells again refused. A Speedway employee, Melanie Cook, who had witnessed Defendant beating Garber, called police. Defendant's assault on Garber was also captured on Speedway's video surveillance cameras.
 {¶ 5} When Kettering police officer John Soto arrived on the scene and made contact with Garber, he observed that Garber was bleeding from the nose and that his face and eyes were swollen and deformed. Garber was yelling at Defendant, "you are going to pay for this." Defendant replied, "you started it." Defendant then got out of the vehicle and fled on foot before being captured by Officer Soto.
 {¶ 6} According to Garber, Wells and Cook, at no time during the altercation between Defendant and Garber did Garber ever threaten or punch Defendant, pull on Defendant's seat belt or shirt trying to get Defendant out of the vehicle, or produce any kind of weapon. Garber only put his fists up in a defensive posture in an attempt to block Defendant's blows to Garber's face. At one point, when Defendant was hitting Garber, Garber attempted to wrap his arms around Defendant's legs and tackle him in order to stop Defendant's assault. When this physical altercation first began, Wells thought that Garber and Defendant were play wrestling.
 {¶ 7} After police arrived, Wells drove Garber to *Page 4 
Kettering hospital. Garber was later transferred to Miami Valley hospital due to his extensive injuries. Garber suffered multiple fractures of his face, extensive swelling of his face, and a subdural hematoma.
 {¶ 8} In a statement he gave to Detective Renner, Defendant claimed that Garber became upset that night because Defendant had been flirting with Wells. Garber told Defendant to stop flirting with his girlfriend. The next thing Defendant knew, he was out of the vehicle and Garber swung at him, and then Defendant swung back hitting Garber. When Garber kept coming, Defendant kept hitting him.
 {¶ 9} Defendant was indicted on one count of felonious assault, causing serious physical harm, in violation of R.C. 2903.11(A)(1). Following a jury trial, Defendant was found guilty as charged. The trial court sentenced Defendant to a four-year prison term.
 {¶ 10} Defendant timely appealed to this court.
FIRST ASSIGNMENT OF ERROR
 {¶ 11} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DID NOT INSTRUCT THE JURY ON THE INFERIOR-DEGREE OFFENSE OF AGGRAVATED ASSAULT WHEN THERE WAS SUBSTANTIAL EVIDENCE DEMONSTRATING SERIOUS PROVOCATION."
 {¶ 12} The decision whether to give a requested jury *Page 5 
instruction is a matter left to the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. State v. Davis, Montgomery App. No. 21904, 2007-Ohio-6680, at ¶ 14. An abuse of discretion means more than just a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 13} Defendant was charged with and found guilty of felonious assault in violation of R.C. 2911.03(A)(1). That section provides: "No person shall knowingly . . . cause serious physical harm to another or another's unborn."
 {¶ 14} R.C. 2903.12, which defines aggravated assault, provides, in part:
 {¶ 15} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 16} "(1) Cause serious physical harm to another or to another's unborn."
 {¶ 17} The elements of felonious assault, and the inferior degree offense of aggravated assault, are identical except for *Page 6 
the mitigating element of serious provocation in aggravated assault.State v. Goldman, Clark App. No. 2006CA103, 2007-Ohio-6682. In State v.Thornton, Montgomery App. No. 20652, 2005-Ohio-3744, at ¶ 50-51, this court observed:
 {¶ 18} "Finally, Thornton argues that the trial court should have granted his requested instruction on aggravated assault. Aggravated assault is an offense of inferior degree of felonious assault. If a defendant, who is charged with felonious assault, presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault. State v. Wong (1994), 95 Ohio App.3d 39. In analyzing whether an aggravated assault instruction is appropriate, the trial court must first determine whether based on an objective standard the alleged provocation was reasonably sufficient to bring on a sudden fit of rage. State v. Shane (1992), 63 Ohio St.3d 630, 634. An aggravated assault instruction is only appropriate when the victim has caused serious provocation. Id. Serious provocation is provocation that is `sufficient to arouse the passion of an ordinary person beyond the power of his or her control.' Id. at 635, 590 N.E.2d 272. Additionally, serious provocation has been described as provocation that is `reasonably sufficient to bring on extreme stress and * * * to incite or to arouse the *Page 7 
defendant into using deadly force.' State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294. Classic examples of serious provocation are assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery. Shane, supra at 635, 590 N.E.2d 272.
 {¶ 19} "If the objective standard is met, then the court must continue on to determine under a subjective standard whether this defendant was actually, `under the influence of sudden passion or in a sudden fit of rage.' Shane, supra at 634, 590 N.E.2d 272. The emotional and mental state of the defendant and the conditions and circumstances that surround him at the time are only considered during this subjective stage of the analysis. Id."
 {¶ 20} Defendant argues that the trial court abused its discretion in refusing to give his requested instruction on the inferior degree offense of aggravated assault because the evidence demonstrates serious provocation on the part of the victim, Garber. Defendant claims that Garber did not like the fact that Defendant was talking to Wells, and that the video from Speedway's surveillance cameras shows that Garber leaned into the vehicle and placed his hands on or grabbed Defendant, that when Defendant exited the vehicle Garber had his fists clinched in a fighting position, and that Garber tackled *Page 8 
Defendant on two occasions.
 {¶ 21} The trial court refused to instruct on aggravated assault, finding no evidence of serious provocation. We agree with the trial court that the evidence fails to demonstrate that Defendant acted out of any serious provocation.
 {¶ 22} Defendant's version of the events is not corroborated by the two eyewitnesses, Wells and Cook, and their testimony does not demonstrate any serious provocation by the victim, Garber. Even if Defendant's claims are true, we find that, viewed objectively, they do not constitute serious provocation which is reasonably sufficient to incite Defendant into using deadly force. Mere verbal exchanges are insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or a sudden fit of rage. State v. Mack,82 Ohio St.3d 198, 1998-Ohio-375. Furthermore, Garber's touching or putting his hands on Defendant, having his hands clinched in a fist, or tackling Defendant after Defendant began hitting Garber in the face, do not constitute serious provocation that is reasonably sufficient to arouse the passions of an ordinary person beyond the power of his control and incite him into using deadly force.
 {¶ 23} According to Defendant's own statement, Garber may *Page 9 
have punched him one time. Defendant's response in savagely beating Garber by repeatedly hitting him in the face, which produced numerous facial fractures and a subdural hematoma, is clearly excessive and out of all proportion to the relatively slight amount of provocation present. We further note that there is nothing in Defendant's own statement to police that demonstrates that he acted under the influence of a sudden passion or in a sudden fit of rage.
 {¶ 24} Because the evidence fails to demonstrate the existence of serious provocation, an instruction on aggravated assault was not warranted by the evidence, and the trial court did not abuse its discretion in refusing to give that instruction.
 {¶ 25} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And FROELICH, J., concur. *Page 1