[Cite as *State v. Maiolo*, 2015-Ohio-4788.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

STATE OF OHIO                                    :
                                                 :
    Plaintiff-Appellee                           :     Appellate Case No. 2015-CA-15
                                                 :
v.                                               :     Trial Court Case No. 14-CR-434
                                                 :
JAMES MAIOLO                                     :     (Criminal Appeal from
                                                 :      Common Pleas Court)
    Defendant-Appellant                          :
                                                 :

. . . . . . . . . .

# O P I N I O N

Rendered on the 20th day of November, 2015.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} James Maiolo appeals from his conviction for breaking and entering. Finding

no prejudicial error, we affirm.

## I. Background

{¶ 2} Maiolo was indicted on one count of breaking and entering for breaking into a vacant house with his brother, who was also charged. While his brother pleaded guilty, Maiolo's case was submitted to a jury. At trial, the state presented a video recording from a surveillance camera that shows two men forcing their way into the house. The owner of the house testified that he installed the camera, and he explained how it worked. Detective Ronald Jordan of the Springfield Police Department testified that when he saw the video he recognized the two men as James and Darren Maiolo, both of whom he knew sold scrap metal to area dealers. Detective Jordan also testified that, in his experience, the motivation for breaking into vacant houses is often to steal metal that can be sold.

{¶ 3} A jury found Maiolo guilty, and he was sentenced to 12 months in prison.

{¶ 4} Maiolo appealed

## II. Analysis

### A. Admission of Maiolo's brother's guilty plea

{¶ 5} The first assignment of error alleges that the trial court erred by admitting evidence that Maiolo's brother pleaded guilty. " 'The admission of evidence is within the discretion of the trial court. * * * Thus the court's decision will be reversed only upon a showing of an abuse of discretion.' " *State v. Miller*, 2d Dist. Greene No. 09-CA-74, 2012-Ohio-211, ¶ 19, quoting *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 38.

{¶ 6} The state referred to Darren Maiolo's guilty plea twice. During its examination of Detective Jordan, the state asked, "Has Darren Maiolo plead guilty to his involvement

in this case?" (Tr. 93). After objection and a sidebar where the court found the brother's plea relevant, Jordan answered, "Yes, he did." (*Id.*). During closing arguments, the state, referring to the surveillance video, said to the jury, "He [Detective Jordan] knew them as soon as he saw them. Darren who already pled guilty is seen only briefly. James, on the other hand, is the star of the show * * *." (*Id.* at 112-113).

{¶ 7} "It is well settled that one person's guilty plea or conviction may not be used as substantive evidence of the guilt of another. *State v. Clark*, 2d Dist. Montgomery No. 13435, 1994 WL 171223, *7 (May 4, 1994), citing *United States v. King*, 505 F.2d 602 (5th Cir.1974). In *Clark*, *supra* at *7, we cited with approval the following passage from *United States v. Bryza*, 522 F.2d 414, 425 (7th Cir.1975):

> Normally the fact that co-defendants have entered guilty pleas has no place in another defendant's trial. Guilty pleas of co-defendants should be brought to the attention of the jury in only certain narrow instances; i. e., when it is used to impeach trial testimony or to reflect on a witness' credibility in accordance with the standard rules of evidence; where other co-defendants plead guilty during trial and are conspicuously absent; where opposing counsel has left the impression of unfairness which raises the issue or invites comment on the subject. In all of these situations the trial judge should give a cautionary instruction concerning the guilty pleas when he charges the jury. However, if the trial judge thinks that the admission of co-defendant's guilty pleas arose out of aggravated or egregious circumstances and that even the strongest curative instruction would be insufficient he can take more drastic action such as declaring a mistrial. *Cf.:*

*United States v. Baete,* 414 F.2d 782 (5th Cir.1969). In some cases this entire problem could be avoided by simply allowing counsel to bring out the fact that the co-defendants were indicted, thus avoiding the impression that the government is being unfair without telling the jurors that the co-defendants had actually admitted their guilt.

*Id.* at 425 (footnote omitted). None of the narrow circumstances mentioned in *Bryza* applies here. The trial court erred by admitting the Appellant's brother's guilty plea.

{¶ 8} Nonetheless, here the evidence erroneously admitted was harmless under Crim.R. 52(A). We have reviewed the entire surveillance video admitted at trial which unmistakably reveals the identifiable defendant repeatedly prying on a door jamb with a metal wrecking bar, forcing the door open and entering the unoccupied house. We do not believe that the two brief references to Darren's guilty plea had any prejudicial impact on the verdict and it was harmless beyond a reasonable doubt. Moreover, the other evidence establishes Maiolo's guilt beyond a reasonable doubt. *Compare State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37 (establishing the analysis that appellate courts are to use in determining whether an error has affected the substantial rights of a defendant).

{¶ 9} The first assignment of error is overruled.

### B. Admission of other evidence

{¶ 10} The second assignment of error alleges that the trial court erred by admitting the surveillance video, Detective Jordan's identification of Maiolo, a photograph of Maiolo, and Detective Jordan's testimony that Maiolo sold scrap metal in Springfield.

**{¶ 11}** Maiolo contends that no foundation was laid for the admission of the surveillance video, that the video was never authenticated. Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." A video is treated like a photograph under the rules of evidence. *See* Evid.R. 1001(2). Photographic evidence is admissible under two different theories. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 150. Under the "pictorial testimony" theory, " 'the photographic evidence is merely illustrative of a witness' testimony.' " *Id.*, quoting *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129, 573 N.E.2d 98 (1991). And under the "silent witness" theory, " 'the photographic evidence is a "silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness.' " *Id.*, quoting *Midland Steel* at 130.

**{¶ 12}** The video here is admissible under the "silent witness" theory. The homeowner testified from personal knowledge about how the security system worked, where the camera was positioned, and how the video was recorded. "No expert was required to substantiate the reliability of the surveillance system." *Pickens* at ¶ 151, citing *Midland Steel* at 130. Also, Maiolo does not allege any problem with the recording itself. "Under these circumstances," the Ohio Supreme Court has concluded, "the state adequately showed the reliability of the surveillance system and the videos produced by it. Thus, the surveillance videos were properly authenticated." (Citations omitted.) *Id.*

**{¶ 13}** Maiolo next challenges the admission of Detective Jordan's testimony that

he recognized the individuals in the video as James and Darren Maiolo. Maiolo says that the detective first indicated that he recognized them from dealing with them on prior cases involving the sale of scrap metal. Not only is this testimony inadmissible prior bad acts evidence, says Maiolo, but also inadmissible hearsay evidence because Detective Jordan said that he had asked for the opinion of other officers in his department in order to identify him and his brother.

{¶ 14} The state asked Detective Jordan if, before he watched the video, he knew the Maiolo brothers. Jordan said that he did. The state then asked, "And based upon your interaction with them in the past, would you recognize them if you saw them?" (Tr. 89). "Yes, I would," Detective Jordan replied. (*Id.*). Earlier, Jordan had testified that he knew Maiolo sold scrap metal in Springfield, but Jordan also said that it is not illegal to sell scrap metal. We do not think that Detective Jordan's identification testimony is necessarily evidence of Maiolo's prior bad acts. Even if it were, it would be admissible to prove Maiolo's motive or intent in breaking into the house. *See* Evid.R. 404(B). Detective Jordan's testimony here is certainly not hearsay. By definition, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In his identification, Jordan did not testify about what someone else said, wrote, or did. *See* Evid.R. 801(A).

{¶ 15} Maiolo also challenges the admission of his "book-in" photograph. He contends that the state failed to authenticate the photo. Maiolo says that the trial court admitted the evidence under the business-record hearsay exception but no evidence proving the exception was presented.

{¶ 16} During his direct examination, Detective Jordan testified that the photo was

a "book-in photograph" of Maiolo taken on June 15, 2014. (Tr. 95). On redirect, Jordan was asked how he knew when the photo had been taken. Jordan said that, when he asked another officer to send him the photo, he asked the officer when the photo had been taken. Maiolo objected, and the trial court sustained the objection with respect to what the other officer said. The state then started asking Detective Jordan about police records to "lay[] a foundation for why this is within an exception of the hearsay rule." (*Id.* at 101). Maiolo again objected. Sustaining the objection, the trial court said that what the other officer said is hearsay, but "[t]he document is an exception under police record." (*Id.*).

{¶ 17} The purpose of the photograph was to show the jury that the person in the video was Maiolo, because, as Detective Jordan testified, Maiolo looked different at trial than he did around the time of the break-in. Jordan said that he saw Maiolo shortly after the break-in and, at that time, his hair was longer than it was at the time of the trial. The photograph is admissible under the "pictorial testimony" theory, which is described above, as " 'merely illustrative' " of Detective Jordan's testimony. *Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, at ¶ 150, quoting *Midland Steel*, 61 Ohio St.3d at 129, 573 N.E.2d 98. Jordan authenticated the photo by saying that that was how Maiolo looked shortly after the break-in. The date on which the photograph was taken is not really relevant.

{¶ 18} Lastly, Maiolo challenges Detective Jordan's testimony that the Maiolo brothers were known sellers of scrap metal in Springfield. Maiolo says that the detective's knowledge was not based on personal knowledge but on the detective's review of the business records of scrap metal buyers and the statements of other detectives.

{¶ 19} It is not clear from the trial transcript where Detective Jordan's knowledge comes from. He had been assigned to the property crimes unit for over ten years. He testified that a common reason for people to break into vacant houses is to steal metal that they can sell and that this was a problem in Springfield. Scrap-metal dealers are required by law to keep records of whom they buy from, said Jordan. He also said that dealers keep surveillance camera video of sellers. Jordan said that he regularly visited scrap-metal dealers and became familiar with the names in the records. The state then asked Jordan, "Now, do you have knowledge from your experience of this defendant being a person who sells scrap metal?" (Tr. 85). Maiolo objected, and during the sidebar that followed, the state said that Jordan's knowledge was "based upon his knowledge of this defendant, based upon his years of experience." (*Id.*). The trial court asked if Jordan had examined business records, and the state said that he had.

{¶ 20} It is possible that Detective Jordan's knowledge that Maiolo sold scrap metal comes from scrap dealers' records. If this were the sole basis of his knowledge, both the hearsay rule and Evid.R. 602, which requires witnesses to have personal knowledge of matters about which they testify, may have been violated by admitting the testimony. But Jordan's testimony about video cameras and his later testimony that he knew what Maiolo looked like suggests that Jordan's knowledge may have a broader foundation.

{¶ 21} Ultimately, though, we do not believe that the testimony prejudiced Maiolo. The video of Maiolo breaking into the house combined with Detective Jordan's identification of him and testimony that a common motivation for breaking and entering into vacant houses is to steal metal is more than enough to find Maiolo guilty.

{¶ 22} The second assignment of error is overruled.

### III. Conclusion

{¶ 23} We have overruled each of the assignments of error presented. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., concurring:

{¶ 24} Normally, a "book-in photograph" is admissible if it is not unduly prejudicial. However, as with any photograph, there must be a foundation as to when it was taken and that it is a fair and actual depiction of the subject of the photograph.

{¶ 25} Here the court sustained an objection to the detective's saying where he got the photograph and to any testimony about how and when this or any book-in photographs are taken; nonetheless, the court then held that the "document is an exception under police record." This is probably correct, but there was no foundation established for the exception.

{¶ 26} The detective was permitted to testify about his knowledge that the appellant sold scrap metal, but then he added that breaking into houses, stealing and selling metal was a problem in Springfield. Whether or not a particular crime is a "problem" in a local community is irrelevant to whether this particular individual on this particular day at this house was breaking in to steal metal. Its only possible effect was to influence the jury to do whatever it could do to stop this "problem" in their community – by convicting this particular individual.

**{¶ 27}** The video clearly showed the appellant and his actions, the jury could see the appellant throughout the trial, and the detective, who knew the appellant before the trial, identified him.   I concur that the errors were harmless beyond a reasonable doubt.

. . . . . . . . . . .

Copies mailed to:

Ryan A. Saunders
Michael R. Pentecost
Hon. Douglas M. Rastatter