[Cite as *State v. Bond*, 2023-Ohio-1226.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29516 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 03825 |
| | : | |
| DOSHIE G. BOND | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 14, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

ANTHONY D. MAIORANO, Attorney for Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Doshie G. Bond appeals from his conviction for felonious assault. Because the trial court erred in sentencing, we must reverse and remand for resentencing. Otherwise, the trial court's judgment is affirmed.


I.      **Factual and Procedural Background**

{¶ 2} On October 26, 2021, Bond purchased some flooring at the Grandview Home Center Outlet in Trotwood. The following day, he returned to the store seeking to return the product, which he claimed was defective. Bond spoke with store employees Ginger Ashworth and Jennifer McCarty, both of whom informed him that the store did not accept returns or exchanges. The record indicates the store also has numerous signs, conspicuously posted, which state that all sales are final. When Ashworth and McCarty refused to permit a return or exchange, Bond indicated he wanted to speak to "the man." Bond then went out of the store to his truck, which was located beside a loading garage. Ginger Ashworth then informed her husband, Ronald, that Bond wanted to speak to him.

{¶ 3} Ronald (hereinafter "Ashworth") then approached Bond, who had opened the loading garage door. Ashworth informed Bond that the store would not accept returns. Ashworth then closed and locked the garage door and reentered the store. Bond subsequently also reentered the store and engaged with Ashworth. At the end of the interaction, Bond punched Ashworth two times; Ashworth fell to the floor, at which point Bond struck him again. Ashworth suffered serious injuries as a result of the attack, including a broken jaw requiring surgical repair, a fractured orbital bone, a fractured rib, a lost tooth, and a closed head injury.

{¶ 4} On November 29, 2021, Bond was indicted on one count of felonious assault (serious physical harm) in violation of R.C. 2903.11(A)(1). A jury trial was conducted in June 2022. Bond was found guilty of the indicted charge, and the trial court sentenced him to an indefinite prison term of eight to twelve years. Bond appeals.

## II.    Jury Instructions

{¶ 5} Bond's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MR. BOND'S REQUEST FOR AN AGGRAVATED ASSAULT JURY INSTRUCTION.

{¶ 6} Bond contends that the trial court abused its discretion by denying his request to give the jury an instruction on aggravated assault as an inferior degree offense of felonious assault.   In support, he argues that there was sufficient evidence for the jury to reasonably find him not guilty of felonious assault and guilty of aggravated assault.

{¶ 7} Aggravated assault is an inferior degree offense of felonious assault, as its elements are identical to the elements of felonious assault except for the additional mitigating element of serious provocation.   *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 32 (2d Dist.); *State v. Roy*, 10th Dist. Franklin No. 14AP-986, 2015-Ohio-4959, ¶ 11.   "Specifically, felonious assault is reduced to aggravated assault if the offender is 'under the influence of sudden passion or in a sudden fit of rage * * * brought on by serious provocation occasioned by the victim.' "   *Conley* at ¶ 33, citing R.C. 2903.12(A) and *State v. Deem*, 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988).

{¶ 8} In determining whether an aggravated assault instruction is appropriate, the trial court must first determine that the victim caused serious provocation sufficient to bring on a sudden passion or fit of rage.   *State v. Henry*, 2d Dist. Montgomery No. 22510, 2009-Ohio-2068, ¶ 18, citing *State v. Shane*, 63 Ohio St.3d 630, 634, 590 N.E.2d 272 (1992).   "Provocation, to be serious, must be reasonably sufficient to bring on extreme

stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Id.* at paragraph five of the syllabus. Words alone are not sufficient to prove provocation. *State v. Crossty*, 12th Dist. Butler No. CA2008-03-070, 2009-Ohio-2800, ¶ 15.

{¶ 9} "In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must [first] be applied." *Shane* at 634. Under an objective standard, "the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Rogers*, 2018-Ohio-1356, 110 N.E.3d 537, ¶ 35 (12th Dist.). If the objective standard is met, "the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.' " *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998), quoting *Shane* at 635.

{¶ 10} The decision whether to give a requested jury instruction is a matter left to the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. *State v. Davis*, 2d Dist. Montgomery No. 21904, 2007-Ohio-6680, ¶ 14. An abuse of discretion occurs when the trial court's decision is arbitrary, unreasonable, or unconscionable. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 11} We find that the trial court did not err in denying Bond's request for an aggravated assault jury instruction, as he presented insufficient evidence, as a matter of law, to support giving an instruction on aggravated assault. During his testimony, Bond

claimed that Ashworth repeatedly said "f*** you n****r" during the first encounter. Bond further testified that during the second encounter, Ashworth continued to use racial slurs. Bond also testified that Ashworth put his hand into his pocket and took a step toward him. However, Bond expressly testified that he did not feel anger. At most, he testified that he felt "agitated" by Ashworth's use of the racial slurs and profanity. He also testified that he attacked Ashworth because he did not know what Ashworth intended when he put his hand in his pocket and moved toward Bond. However, Bond did not claim to be angry or upset, nor did he claim he was afraid of Ashworth. Instead, he merely testified that Ashworth seemed hostile. Witnesses to the incident testified that the second encounter between the men did not appear heated and that the men were speaking in normal voices and did not appear to be arguing until Bond attacked.

{¶ 12} The evidence presented at trial, even when viewed in a light most favorable to Bond, did not raise a possibility of serious provocation occasioned by Ashworth. Because the evidence failed to demonstrate the existence of serious provocation, an instruction on aggravated assault was not warranted, and the trial court did not abuse its discretion in refusing to give that instruction. Therefore, Bond's first assignment of error is overruled.

### III.    Video Surveillance

{¶ 13} Bond's second assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT ADMITTED THE VIDEO SURVEILLANCE FOOTAGE CONTAINED IN STATE'S EXHIBIT 21.

{¶ 14} Bond contends that the trial court erred by admitting video surveillance from the store. In support, he seems to argue that the video was hearsay and that the business record exception to the hearsay rule did not apply. He also seems to argue that the video was not properly authenticated.

{¶ 15} A trial court has broad discretion regarding the admission of evidence, and a "reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion." *State v. Montgomery*, 2d Dist. Montgomery No. 28404, 2020-Ohio-513, ¶ 16, quoting *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. The issue then is whether the trial court's admission of the contested evidence was unreasonable, arbitrary, or unconscionable. *Id.*

{¶ 16} The video to which Bond objects showed Bond entering the store with a piece of flooring in his hands. It also showed him interacting with Ginger Ashworth. The video did not show the interactions between Bond and Ronald Ashworth, but it did show Bond calmly and unhurriedly leaving the premises after the altercation.

{¶ 17} First, Bond argues the surveillance video constituted hearsay evidence, and the State was thus required to present the testimony of a record custodian to make the video admissible under the business records exception to the hearsay rule. He argues that the State failed to qualify the video as a business record because its witness, Ginger Ashworth, "did not have sufficient familiarity with how the surveillance footage was maintained or stored to show that she was qualified to testify as a witness to those business records."

{¶ 18} Hearsay is "a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A "statement" is (1) an oral or written assertion or (2) nonverbal conduct intended to be an assertion. Evid.R. 801(A). For hearsay purposes, an "assertion" is "a statement about an event that happened or a condition that existed." *State v. Wellman*, 10th Dist. Franklin No. 05AP-386, 2006-Ohio-3808, ¶ 14, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 61. There is no "statement" for hearsay purposes where a witness does not testify about "what someone else said, wrote, or did." *State v. Maiolo*, 2d Dist. Clark No. 2015-CA-15, 2015-Ohio-4788, ¶ 14, citing Evid.R. 801(A).

{¶ 19} Here, no one attempted to convey thoughts to another by statements in the video. Instead, the video only depicted nonverbal conduct, which is hearsay "only when it is intended by the actor to be an assertion of his belief." *State v. Kniep*, 87 Ohio App.3d 681, 685, 622 N.E.2d 1138 (9th Dist.1993). "Thus, it has been recognized that only that conduct apparently intended by the actor to convey his thoughts to another, comes under the ban of the hearsay rule. The rationale behind this rule is that it is unlikely a person would attempt any purposeful deception in the absence of any intent to communicate." *Id.* citing McCormick, Evidence (3 Ed.Cleary Ed.1984) 738-739, Section 250; 11 Moore, Federal Practice (1989), Paragraph 801.01[3-1], at VIII-19.

{¶ 20} The video depicted Ginger Ashworth's interaction with Bond. After the interaction was complete, Bond walked out of the camera's view. There is nothing in the video to suggest that Ginger Ashworth was attempting to convey her thoughts or beliefs

to Bond or anyone else.[1]

{¶ 21} We find nothing to indicate the video constituted hearsay; it contained no statement as that term is defined in Evid.R. 801(A). *See Kniep at* 685 (video showing six-month-old child crying was not hearsay). Thus, there was no requirement that the video meet the business records exception to be admissible.

{¶ 22} Next, Bond appears to argue the video was not otherwise properly authenticated. Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity. *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 33, citing *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21. Instead, the State only needs to demonstrate a "reasonable likelihood" that the evidence is authentic. *State v. Thomas*, 12th Dist. Warren No. CA2010-10-099, 2012-Ohio-2430, ¶ 15.

{¶ 23} Photographic evidence, including videotapes, can be authenticated under two theories. Under the pictorial-testimony theory, evidence is admissible "when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on the witness' personal observation." *Midland Steel Prod. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-130, 573 N.E.2d 98 (1991); *State v. Hoffmeyer*, 9th Dist. Summit No. 27065, 2014-Ohio-3578, ¶ 19. Under the silent-witness theory,

---

[1] The analysis relates to Ginger Ashworth because Bonds's words or conduct offered against him were not hearsay under Evid.R. 801(D)(2).

photographic evidence is a "silent witness," which "speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." *State v. Maiolo*, 2d Dist. Clark No. 2015-CA-15, 2015-Ohio-4788, ¶ 11, quoting *Midland Steel* at 130. Under this theory, evidence is admissible "upon a sufficient showing of the reliability of the process or system that produced the evidence." *Id.* No expert testimony is required to substantiate the reliability of the surveillance system. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 151; *Midland Steel* at 130.

**{¶ 24}** The State provided sufficient testimony from Ginger Ashworth that the store had a video recording system with a camera in the warehouse. She testified the recordings were maintained by an outside company but were available upon request from the main office of her company. She testified that once a request was made, a passcode was provided to access the footage. Further, Ginger Ashworth was able to testify that the video was a true and accurate depiction of the events of the day, and there is nothing in this record to indicate that the video should be deemed unreliable or untrustworthy. Accordingly, there is no basis to conclude that the trial court's admission of the evidence was an abuse of discretion.

**{¶ 25}** The second assignment of error is overruled.

## IV. Sentencing

**{¶ 26}** The third assignment of error provides:

THE TRIAL COURT FAILED TO PROVIDE PROPER NOTICES UNDER R.C. 2929.19(B)(2)(c) AT MR. BOND'S SENTENCING HEARING.

{¶ 27} Bond claims the trial court erred at sentencing by failing to provide him with the mandatory Reagan Tokes Act notices regarding the rebuttable presumption that he would be released from prison at the expiration of the minimum sentence imposed, as set forth in R.C. 2929.19(B)(2)(c). The State concedes the error. Accordingly, the third assignment of error is sustained.

## V. Juror Dismissal

{¶ 28} Bond's fourth assignment of error states:

THE TRIAL COURT ERRED WHEN IT DISMISSED A FEMALE JUROR FOR MISSING PART OF THE TRIAL BUT ALLOWED A MALE JUROR TO REMAIN.

{¶ 29} Bond asserts the trial court erred in its response to two jurors who, according to the record, appeared to be sleeping during the trial.

{¶ 30} Sleeping during trial is a form of juror misconduct. *United States v. Sherrill*, 388 F.3d 535 (6th Cir.2004). Moreover, a juror who sleeps through much of the trial testimony cannot be expected to perform his or her duties. *United States v. Warner*, 690 F.2d 545 (6th Cir.1982), citing Fed.R.Crim.P. 24(c). However, "if a sleeping juror has not missed 'large or critical portions' of the proceedings, no prejudice results from that juror's remaining on the jury." *State v. Breneman*, 2d Dist. Champaign No. 2019-CA-23, 2020-Ohio-4151, ¶ 57, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 112, citing *State v. Sanders*, 92 Ohio St.3d 245, 253, 750 N.E.2d 90 (2001). A trial court has broad discretion in handling a situation in which a juror has fallen asleep

during testimony.   *Sanders* at 253.

{¶ 31} In this case, the trial court notified counsel that the bailiff would address a female and male juror to determine whether they had any reason for appearing to sleep. Thereafter, the trial court addressed the female juror outside the presence of the other jurors.   The female juror admitted she had fallen asleep during testimony.   She further informed the court that she worked night shifts and was accustomed to sleeping during the day.   The juror admitted it was possible she had missed some of the State's case. She also candidly admitted that she was not positive that she could remain awake and alert.   Without objection, the trial court dismissed her from further service.   The court noted that the male juror had denied falling asleep when confronted by the bailiff and that he appeared to have merely closed his eyes, while the female juror had been clearly sleeping.   The court stated that it might address the issue with the male juror later if the problem persisted.   Again, neither party objected.

{¶ 32} The next day, the trial court addressed the male juror outside the presence of the other jurors.   The juror stated that he worked night shifts but that he had been able to get off work early and sleep before reporting for trial.   He further assured the court that he was feeling well and would remain awake for the remainder of the trial.   The juror was not dismissed, and neither party raised an objection to the court's decision.

{¶ 33} Bond takes issue with the trial court's decision to permit the male juror to continue his jury service.   He appears to intimate that the court differentiated between the two jurors based upon their gender when it decided whether to dismiss them from service.   However, from our review of the record, as discussed above, we find no

indication that the release of the female juror was based upon anything other than her admissions that she had fallen asleep and that she could not assure the court that she could remain awake. Conversely, the male juror did not admit to sleeping, and he assured the court that he could remain awake and alert for the remainder of the trial. Thus, we find no gender discrimination, and we find no abuse of discretion regarding the dismissal of only the female juror.

{¶ 34} The fourth assignment of error is overruled.

## VI.     Ineffective Assistance of Counsel

{¶ 35} For his fifth assignment of error, Bond asserts the following:

MR. BOND WAS DENIED HIS RIGHT TO COUNSEL IN THE TRIAL COURT GUARANTEED UNDER THE FOURTEENTH AND SIX AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 36} Bond claims he was denied the effective assistance of counsel at trial. Specifically, he contends counsel improperly conceded that the offense occurred. He further contends that counsel "gave up on trying to get Mr. Bond's mental state in the record after the court sustained the state's objection." He further claims counsel was ineffective for failing to obtain a jury instruction on aggravated assault and for failing to ask for instructions on "misdemeanor or reckless" assault.

{¶ 37} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In order to prevail on an ineffective assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 38} To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29, citing *Strickland*.

{¶ 39} To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 40} When reviewing ineffective assistance claims, we will not second-guess trial strategy decisions. *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998);

*Strickland* at 689. Therefore, " 'trial counsel is allowed wide latitude in formulating trial strategy[.]' " *State v. Collins*, 2d Dist. Miami No. 2010-CA-22, 2011-Ohio-4475, ¶ 15, quoting *State v. Olsen*, 2d Dist. Clark No. 2009-CA-110, 2011-Ohio-3420, ¶ 121. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 41} Bond first claims counsel was deficient because he admitted during the opening statement that an assault had occurred. A review of the opening statement supports Bond's characterization. Specifically, counsel did not deny there had been an assault. However, defense counsel did so in the context of attempting to present evidence that the assault constituted aggravate assault rather than felonious assault. Because this clearly fell within counsel's discretion regarding trial strategy, we cannot say that it constituted deficient nor prejudicial conduct.

{¶ 42} Bond next asserts that counsel did not argue appropriately to the trial court that he was entitled to an instruction on aggravated assault. In conjunction, Bond argues that counsel "gave up on trying to get Mr. Bond's mental state in the record." We find no merit in this argument; a review of the opening statement, Bond's testimony, and the closing argument demonstrates that counsel attempted to establish that Bond had acted upon serious provocation by the victim. Further, counsel made appropriate arguments to the trial court. The mere fact that the trial court did not give the requested instruction does not render counsel's representation deficient.

**{¶ 43}** Finally, Bond argues that counsel should have requested jury instructions on misdemeanor or reckless assault. R.C. 2903.13(A) and (B) proscribe assault and state, respectively, that no person shall knowingly cause physical harm to another and no person shall recklessly cause serious physical harm to another.

**{¶ 44}** Clearly, Bond caused serious physical harm to Ashworth. Therefore, assault under R.C. 2903.13(A) did not apply to this case. Further, the record is devoid of any evidence that Bond's conduct was reckless. Thus, counsel was not ineffective because he did not request a reckless assault instruction.

**{¶ 45}** The fifth assignment of error is overruled.

## VII. Conclusion

**{¶ 46}** Bond's third assignment of error being sustained, the judgment of the trial court is reversed as to the sentence, and the matter is remanded for the sole purpose of resentencing Bond in order to provide the proper R.C. 2919.19(B)(2)(c) notifications. The judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.