[Cite as *State v. Stevens*, 2025-Ohio-302.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 23-CR-0632 |
| | : | |
| CHRISTIAN STEVENS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 31, 2025

. . . . . . . . . . .

ANTHONY D. MAIORANO, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Christian Stevens appeals from his conviction for counterfeiting in the Clark County Court of Common Pleas. He was sentenced to 17 months in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

**I.      Facts and Procedural History**

{¶ 2} On September 6, 2023, Christian Pierre and his wife were working at their store – the Daily Mart on East Main Street in Springfield – when three young men came into the store to buy a case of Coca Cola. When they entered, Pierre was stocking shelves close to the front of the store and his wife was working the counter. After selecting the case of soda, the men went to the counter to pay. One of the men, later identified as Stevens, pulled out a $100 bill and gave it to Mrs. Pierre.

{¶ 3} According to Pierre, it was immediately evident that the $100 bill was a fake; it felt like paper, it had the word "copy" printed on it, and on the back, there were the words "for motion picture purposes" and "In props we trust" instead of "In God we trust." Exhibits 2A and 2B. Pierre told the jury that his "wife just kind of eyes to me to let me know by body language, that this one was a fake one[.]" Trial Tr. at 128.

{¶ 4} Suspecting criminal activity and not wanting to inflame the situation, Pierre walked outside to call 911 and to attempt to take a picture of the suspect's vehicle. Meanwhile, inside the store, Mrs. Pierre was stalling, and when Stevens and the others saw Pierre taking pictures, they came outside to confront Pierre. In an attempt to delay even further, Pierre asked Stevens if he wanted his change, but he refused, saying that it was taking too long. Pierre told the jury that Stevens told him, "I don't want to buy anymore. I'm out." Trial Tr. at 130. Stevens fled the scene, leaving behind the fake bill, the case of Coke he was purportedly buying, and his change.

{¶ 5} Springfield police arrived soon thereafter. Pierre informed Officer Dylan Yankle of what had transpired, gave him the fake $100 bill, and showed him a picture he had taken of the person who had tried to pay with the bill. Officer Yankle immediately

recognized the suspect as Stevens; he was arrested a short time later and charged with a single count of counterfeiting, in violation of R.C. 2913.30(B)(2).

{¶ 6} A jury trial was held on February 22, 2024. The jury heard testimony from Pierre and Officer Yankle on behalf of the State, and Tremon Riggins (who testified that he, in fact, was the guilty party) took the stand for Stevens. After a short deliberation, Stevens was found guilty as charged. A few weeks later, he was sentenced to 17 months in prison for the counterfeiting charge and an additional 432 days that were remaining on his post-release control from a prior conviction.

{¶ 7} Stevens has filed a timely appeal with four assignments of error.

## II.     Jury Instruction

{¶ 8} At the close of testimony at trial, the State asked for and was granted a "consciousness of guilt" jury instruction related to "flight." In his first assignment of error, Stevens contends that the trial court erred in giving this instruction.

{¶ 9} The purpose of jury instructions is to guide the jury in deciding questions of fact based on the substantive law. *State v. Rac*, 2019-Ohio-893, ¶ 13 (2d Dist.); *Griffis v. Klein*, 2005-Ohio-3699, ¶ 48 (2d Dist.). And while a trial court has great discretion to decide how to fashion jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts" of the case. *State v. Gibson*, 2019-Ohio-1022, ¶ 21 (2d Dist.), quoting *State v. White*, 2015-Ohio-492, ¶ 46. "A trial court's decision to give or to withhold particular jury instructions is reviewed for an abuse of discretion." *Id.* at ¶ 22.

{¶ 10} As to "consciousness of guilt" instructions, this Court has noted that they

are appropriate "when an accused takes an affirmative step to conceal conduct or avoid consequences of his or her illicit dealings." *State v. Sutherland*, 2021-Ohio-2433, ¶ 18 (2d Dist.). Today, it is universally recognized that an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and the like are admissible as evidence of consciousness of guilt, and thus of guilt itself. *State v. Williams,* 79 Ohio St.3d 1, 11 (1997).

**{¶ 11}** "Evidence of flight to support an inference of guilt should generally be limited to situations when the activities associated with flight occur at a time and place near the criminal activity for which the defendant is on trial." *State v. White*, 2015-Ohio-3512, ¶ 48 (2d Dist.). "Flight" means an escape or affirmative attempt to avoid apprehension and can take the form of fleeing from the police or eyewitnesses or changing/disguising physical characteristics after the fact. *State v. Wesley,* 2002-Ohio-4429, ¶ 19 (8th Dist.).

**{¶ 12}** Here, trial testimony indicated that Stevens and two others came into the Daily Mart to buy a case of Coca Cola, and that Stevens attempted to pay for the item using a fake $100 bill. When it became apparent, however, that the Pierres were suspicious of the scheme, Stevens fled the scene, leaving behind the Coke, the fake $100 bill, and the change he was due – presumably $80 or $90. It was reasonable to believe that Stevens left behind all those items to avoid the "consequences of his illicit dealings."

**{¶ 13}** The facts of this case demonstrate that Stevens took actions that could be interpreted as flight. As such, we cannot conclude that the trial court abused its discretion by giving the jury this instruction. The first assignment of error is overruled.

**III.    Hearsay**

{¶ 14} Stevens's second assignment of error raises issues related to the trial court's admission of several statements. First, he argues that the trial court abused its discretion when it admitted certain hearsay statements over defense counsel's objection, and then he contends that the court erred when it allowed some not-objected-to hearsay statements.

{¶ 15} Evid.R. 801(C) defines "hearsay" as: "A statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is defined as: "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." Evid.R. 801(A). An "assertion" is a statement about an event that transpired or a condition that existed. *State v. Bond*, 2023-Ohio-1226, ¶ 18 (2d Dist.).

<u>Objected-to Statements</u>

{¶ 16} During the course of Pierre's testimony, defense counsel objected to two statements as hearsay. The first was: "three young guys come into the store, and they say they want to buy a pack of pops." Trial Tr. at 125. The trial court overruled the objection without explanation. The second statement was: "they say they were ready to pay[.]" Trial Tr. at 126. This time, the court overruled with an explanation – the statement was not offered for the truth, but just that it was stated.

{¶ 17} We agree with the trial court's rulings with respect to these statements. As to the first, that Stevens and his friends stated they wanted to buy pop, it is clear that Pierre told the jury that not to prove that the men, indeed, wanted to buy a case of Coke, but instead, just to set the scene and to move the story along. Further, Stevens elicited

the same information during Pierre's cross-examination.

> Defense Counsel:  And they asked about purchasing a case of soda?
>
> Pierre: Yeah.         Pop, something.
>
> Defense Counsel:  Okay. Who was it that asked about purchasing this case of pop?
>
> Pierre:              That was that guy (indicating Stevens).

Trial Tr. at 137-138. The next statement, that Stevens declared he was ready to pay, was not asserted to prove that he actually was ready to pay, but to explain to the jury what actions were taken next, i.e. how and why the parties' interaction proceeded. The trial court did not abuse its discretion by overruling Stevens's objections to this testimony.

<u>Not-Objected-to Testimony</u>

**{¶ 18}** Stevens also asserts that the trial court erred when it allowed non-verbal hearsay testimony, although he concedes that there were no objections made at trial.

**{¶ 19}** "Nonverbal conduct is hearsay only when it is intended by the actor to be an assertion of [the actor's] belief. Thus, it has been recognized that only that conduct apparently intended by the actor to convey [that person's] thoughts to another, comes under the ban of the hearsay rule. The rationale behind this rule is that it is unlikely a person would attempt any purposeful deception in the absence of any intent to communicate." *State v. Kniep*, 87 Ohio App.3d 681, 685 (9th Dist. 1993), citing McCormick, Evidence (3 Ed.Cleary Ed.1984) 738-739, Section 250; 11 Moore, Federal Practice (1989), Paragraph 801.01[3-1], at VIII-19; *State v. Bond*, 2023-Ohio-1226, ¶ 19 (2d Dist.).

{¶ 20} Stevens objects on appeal to Pierre's description of how his wife communicated that there was something awry at the counter when Stevens attempted to pay. He told the jury: "[M]y wife just kind of eyes to me to let me know by body language, that this one is a fake one . . . Just we don't talk but we react by body language[.]" Trial Tr. at 128. Stevens also takes issue with this testimony: "She's the one receive the fake $100 bill and she talked to me by the sign." Trial Tr. at 140.

{¶ 21} As to these statements about non-verbal cues given by Mrs. Pierre, there is an argument to be made that she was trying to assert the belief that Stevens was trying to pass a fake bill; however, the opposite could be true as well. Those "statements" were offered to explain why Pierre called the police. Either way, "[t]he fact that defense counsel did not object to this hearsay testimony at the time of trial requires us to utilize a plain error standard of review. Plain error is not grounds for reversal, unless it is established that but for the error, the outcome of the trial would have been different." *State v. Hartman*, 2016-Ohio-2883, ¶ 78 (2d Dist.). In this case, we cannot conclude that the outcome of the trial would have been different. Even without this testimony, there was strong evidence of Stevens's guilt, most prominently, that Pierre saw him pass the obviously fake money to Mrs. Pierre to pay for the Coke.

{¶ 22} The trial court did not abuse its discretion when it allowed the objected-to statements because they were not offered to prove the truth of the matter asserted. Neither was there plain error in the admission of the not-objected-to testimony, because even if these "statements" were problematic, they did not affect the outcome of the trial. Stevens's second assignment of error is overruled.

## IV.    Confrontation Clause

{¶ 23} Stevens's third assignment of error again challenges the alleged hearsay statements, but here he claims that the statements were violations of his Sixth Amendment right to confront his accuser.

{¶ 24} The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The United States Supreme Court has held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford* v. *Washington,* 541 U.S. 36, 53-54 (2004).

{¶ 25} " 'The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' " *State v. Issa*, 93 Ohio St.3d 49, 59 (2001), quoting *State v. Madrigal*, 87 Ohio St.3d 378, 384 (2000), quoting *Maryland v. Craig*, 497 U.S. 836, 845 (1990). However, because only testimonial hearsay implicates the Confrontation Clause, the admission of non-testimonial statements does not violate a defendant's rights. *State v. McKelton*, 2016-Ohio-5735, ¶ 185.

{¶ 26} Whether statements are testimonial depends on their purpose. A testimonial statement is made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *State v. Stahl*, 2006-Ohio-5482, ¶ 46, quoting *Crawford* at 53.

{¶ 27} Stevens challenges the use of Mrs. Pierre's non-verbal statements to her

husband, claiming that "[i]t is clear as day that Pierre's wife's statements were intended to be used in 'investigating and prosecuting the crime.' " Appellant's Brief at 17, quoting *State v. Duncan*, 2006-Ohio-5009, ¶ 21. We disagree. It seems much more likely that Mrs. Pierre, a Haitian immigrant who did not speak English, had a feeling something was not quite right, knew the bill was fake, and got the attention of her husband to let him know. There was nothing in her non-verbal communication with Pierre that denoted she thought the statement would later be used at trial. She was simply trying to get her husband's attention.

{¶ 28} We cannot conclude there was a Sixth Amendment violation here because Mrs. Pierre's "statement" was not testimonial. In the alternative, because there was no objection, plain error review would be used; however, the admission of this evidence did not change the outcome of the trial, and we find no plain error. Stevens's third assignment of error is overruled.

## V.     Ineffective Assistance of Counsel

{¶ 29} In his fourth and final assignment of error, Stevens claims that his trial counsel was ineffective for failing to object to various perceived hearsay statements.

{¶ 30} To prevail on an ineffective assistance of counsel claim, Stevens must prove that his attorney was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The test has two parts. First, he must show that counsel's performance was deficient. *Id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense." *Id.*

{¶ 31} With respect to the first prong, much deference is given to trial counsel. "[A] court must indulge in a strong presumption that the challenged action might be considered sound trial strategy. Thus, judicial scrutiny of counsel's performance must be highly deferential." *State v. Bird*, 81 Ohio St.3d 582, 585 (1998). To demonstrate prejudice, the second prong, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1998), first paragraph of the syllabus.

{¶ 32} We have already concluded that there were no hearsay or Confrontation Clause issues, and because of that, we cannot conclude that Stevens's trial counsel made any errors, let alone ones so severe that they rose to the level of being constitutionally deficient. Stevens's fourth assignment of error is overruled.

## VI. Conclusion

{¶ 33} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.